**UNITED STATES**

v.

**Airman Leslie D. RILEY, United States Air Force.**

**ACM 32183 (f rev).**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 17 Feb. 1996.

Decided 15 March 2000.

Appellate Counsel for Appellant: Colonel Jeanne M. Rueth, Lieutenant Colonel James R. Wise, and Captain Karen L. Hecker.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Captain Mitchel Neurock.

Before YOUNG, Senior Judge, SPISAK, Senior Judge, and HEAD, Appellate Military Judge.

## OPINION OF THE COURT UPON FURTHER REVIEW

YOUNG, Senior Judge:

Court members convicted the appellant of the premeditated murder of an infant to which she had just given birth in the restroom of the Dyess Air Force Base Emergency Room. Article 118(1), UCMJ, 10 U.S.C. § 918(1). During sentencing argument, the trial defense counsel advised the court members that, by finding the accused guilty of premeditated murder, the decision on how long to confine the appellant had been taken out of their hands—premeditated murder carries a mandatory period of confinement for life. Article 118, UCMJ. The trial defense counsel then reminded the court members of the military judge's erroneous instruction permitting reconsideration of the findings. The members reconsidered, returned a finding of guilty of unpremeditated murder, and sentenced the appellant to a dishonorable discharge, confinement for 25 years, forfeiture of all pay and allowances, and reduction to E–1. Article 118(2), UCMJ, 10 U.S.C. § 918(2).

This Court found her conviction for murder factually insufficient, but approved findings of guilty of the lesser included offense of involuntary manslaughter through culpable negligence (Article 119(b)(1), UCMJ, 10 U.S.C. § 919(b)(1)), and a sentence to a dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to E–1. *United States v. Riley*, 47 M.J. 603 (A.F.Ct.Crim.App.1997). We held as follows:

> We are not convinced, beyond a reasonable doubt, that Airman Riley fractured her daughter's skull with the intent to kill or inflict great bodily harm. We are convinced, however, that Airman Riley's disregard for the foreseeable consequences of refusing and impeding assistance in the delivery and care of her child constituted culpable negligence and was the proximate cause of her child's death.

*Id.* at 608; Article 119(b)(1), UCMJ, 10 U.S.C. § 919(b)(1). We recognized

> that trial defense counsel persuaded the military judge not to instruct the members on failure to seek medical care as a basis for finding Airman Riley guilty of any offenses. However, Airman Riley did not merely fail to seek medical care—she obstructed it with a culpable disregard for the foreseeable consequences to her newborn daughter.

*Riley*, 47 M.J. at 608.

The Court of Appeals for the Armed Forces (CAAF) rejected this Court's holding.

*United States v. Riley,* 50 M.J. 410 (1999). Writing for the majority, Judge Gierke noted that the prosecution had expressly disclaimed the theory that the appellant failed to summon medical assistance, and the theory that the appellant intentionally prevented medical intervention was neither asserted by the prosecution nor submitted to the trier of fact. *Id.* at 416. As the appellant was not given an opportunity to defend against the latter theory, the Court held her conviction for involuntary manslaughter by culpable negligence violated due process. *Id.* (citing *Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979)). The Court reversed and remanded.

## I. Scope of the Remand and Review

Before we analyze the facts of this case, it is important that we describe with some specificity the limits of our authority to revisit our previous findings. The Government claims this Court is "empowered to revisit its determination regarding factual sufficiency" and should find the appellant's conviction for unpremeditated murder legally and factually sufficient. Predictably, the appellant disagrees.

We would welcome an opportunity to revisit this Court's previous conclusion that the appellant's conviction for unpremeditated murder was factually insufficient; however, we can find no basis that would permit us to do so. We recognize that decisions of this Court are not self-executing. Cases must be returned to the parties who can implement the Court's decision. *United States v. Miller,* 47 M.J. 352, 361 (1997) (citing *United States v. Kraffa,* 11 M.J. 453, 455 (C.M.A. 1981)). Within 30 days of the service of the decision on the appellate counsel, the Court may, on its own motion or motion of one of the parties, reconsider the original decision, so long as neither party has applied to the CAAF for further consideration of the case. Courts of Criminal Appeals Rules of Practice and Procedure 19, 44 M.J. LXIII (May 1, 1996).

Thus, the release of our previous opinion did not, by itself, acquit the appellant of unpremeditated murder. Normally, when one of the parties applies in a timely manner to the CAAF for review, as was done in this case, the decision of this Court is inchoate—not final. However, as the CAAF cannot review questions of factual sufficiency, the acquittal became final on 14 December 1997, 30 days after the parties received our decision, and no request for reconsideration was made.

▇ Furthermore, we are not unmindful that our authority on remands is limited. We "can only take action that conforms to the limitations and conditions prescribed by the remand." *United States v. Montesinos,* 28 M.J. 38, 44 (C.M.A.1989). The CAAF's remand in this case provides as follows:

> It is clear from the opinion of the court below that it found the evidence factually insufficient to support a conviction of unpremeditated murder. 47 M.J. at 608. It is not clear, however, whether that court also found the evidence factually insufficient to support a conviction of a lesser-included offense premised on negligent infliction of the fatal injuries on the baby. Accordingly, we will remand the case to the court below for clarification of its decision and reconsideration under correct legal principles. Reconsideration must be consistent with our holding that culpability based on the withholding of medical care, either intentionally or negligently, was never submitted to the trier of fact and thus is precluded as a basis for affirmance, as a matter of due process.

*Id.* at 416.

The remand does not suggest that we may reconsider the offense of unpremeditated murder.

The appellant and appellee also split on whether this Court can reconsider factual findings we made in our previous opinion that could affect our decision on remand. The appellant argues that we are restricted to our previous findings, while the Government contends the remand gave us carte blanche to reconsider each of the findings of fact. We take the middle road. We believe, at a minimum, we are not bound by findings of fact that are clearly erroneous.

## II. Analysis

Under the terms of the remand, we believe we have the authority to determine whether the evidence is factually sufficient for the offenses of involuntary manslaughter and negligent homicide. Article 119(b), UCMJ, provides that an accused who unlawfully kills a human being by either culpable negligence or while perpetrating an offense against a person may be convicted of involuntary manslaughter. The elements of the offense of involuntary manslaughter are as follows:

(1) That a certain named or described person is dead;

(2) That the death resulted from the act or omission of the accused;

(3) That the killing was unlawful; and

(4) That this act or omission of the accused constituted culpable negligence, or occurred while the accused was perpetrating or attempting to perpetrate an offense directly affecting the person other than burglary, sodomy, rape, robbery, or aggravated arson.

*Manual for Courts–Martial, United States* (*MCM*), Part IV, ¶ 44b(2) (1995 ed.). We will not consider the theory of involuntary manslaughter based on the perpetration of an offense against a person, as the military judge did not instruct the members on such a theory.

The elements of the offense of negligent homicide are as follows:

(1) That a certain person is dead;

(2) That this death resulted from the act or failure to act of the accused;

(3) That the killing by the accused was unlawful;

(4) That the act or failure to act of the accused which caused the death amounted to simple negligence; and

(5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM*, Part IV, ¶ 85b.

These offenses are basically the same, except involuntary manslaughter requires a higher degree of negligence. "Simple negligence is the absence of due care, that is, an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care of the safety of others which a reasonably careful person would have exercised under the same or similar circumstances." *MCM*, Part IV, ¶ 85c(2).

Culpable negligence is a degree of carelessness greater than simple negligence. It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission. Thus, the basis of a charge of involuntary manslaughter may be a negligent act or omission which, when viewed in the light of human experience, might foreseeably result in the death of another, even though death would not necessarily be a natural and probable consequence of the act or omission.

*MCM*, Part IV, ¶ 44c(2)(a)(i).

The evidence of record clearly established the baby was born alive, but died shortly thereafter while in the sole care and custody of her mother, the appellant. The cause of death was an injury to the head causing damage to the brain and brain stem. There was no justification or excuse for the appellant to have killed this child. Therefore, there are only two remaining issues to be resolved—did the death result from an act or omission of the appellant and did the act or omission amount to culpable or simple negligence?

In our previous opinion, we suggested the evidence was insufficient to establish the manner of death because we concluded that no witness testified "that the injuries were less likely to have resulted from Airman Riley falling onto her daughter than the theories advanced by the prosecution." *Riley*, 47 M.J. at 608. This statement is clearly erroneous and not in accord with the evidence. The medical examiner, Dr. Krouse, testified the deceased's injuries were caused by the application of blunt force to her head and could not have been self-inflicted. The force must have been significant to cause bilateral fractures sufficient "to virtually crush the skull," because a newborn infant's skull is quite elastic. Dr. Krouse did not have a favorite theory, but believed that one

or two blows of significant force caused the deceased's injuries. R. at 459. Dr. Krouse was never asked if the injuries could have been caused by the appellant falling on top of her child. Dr. Hymel, a pediatrician qualified as an expert in child abuse and abusive head trauma, admitted the appellant "hypothetically" could have caused the injuries by falling on the infant (R. at 498), but considered it "highly, highly" more likely that the injuries were caused by two blows to the head. R. at 503–04.

Furthermore, the defense theory that the appellant may have fainted and fallen on her child by accident is mere speculation without any factual foundation. There is no evidence the appellant fainted. In fact, the appellant's own statement to law enforcement officials is to the contrary. She claimed that after the baby squirted out onto the floor, she knelt down on the floor to examine it.

In our previous opinion, we also concluded that there was "no evidence that the baby was choked or strangled, which would seem the obvious choice for quickly muffling and killing an unwanted baby." *Id.* at 608. This conclusion was clearly erroneous. Two physicians testified they found a rolled up paper towel protruding from the dead infant's mouth immediately after it was discovered. In addition, the medical examiner found abrasions of the neck and hemorrhage of strap muscles and fascia of the neck consistent with markings from fingernails. This is some evidence that the appellant may have attempted to silence the child. This may also explain why the medical technicians located outside the restroom did not hear the baby cry.

▮ Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we "may affirm only such findings of guilty ... as [we] find[ ] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, the Court is convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324–25 (C.M.A.1987).

▮ After a thorough review of the case, we are convinced beyond a reasonable doubt that the appellant is guilty of involuntary manslaughter by culpable negligence. Infant Riley's short life began and ended in the confines of the restroom, while she was alone with the appellant. Based on the extent of the injuries and the testimony of the prosecution's experts, the injuries the baby sustained could not have resulted from simple negligence, such as dropping the baby on the floor or accidentally banging the baby's head on the sink or toilet. We are convinced beyond a reasonable doubt the appellant stuffed a paper towel in her baby's mouth to muffle any cries and then applied force to the skull of her infant in a gross and reckless manner which, when viewed in the light of human experience, might foreseeably result in the infant's death.

We do not think it necessary to resolve whether the appellant struck the infant's head against or with some hard object once or twice or crushed the head between two objects. There is no requirement that two-thirds of the members of the court-martial agree on a particular theory of criminal liability. *See United States v. Garner*, 43 M.J. 435, 437 (1996) (citing *Schad v. Arizona*, 501 U.S. 624, 631–32, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991)); *United States v. Vidal*, 23 M.J. 319, 324 (C.M.A.1987). It is sufficient that two-thirds of the members are convinced of the accused's guilt beyond a reasonable doubt. We believe this rule applies to the judges on the courts of criminal appeals when performing their fact-finding duties. We do not have to agree on the number of blows or whether the infant's head was crushed between two objects or struck by or with some object, as long as we are convinced beyond a reasonable doubt of each element of the offense.

Having found the appellant guilty of the lesser included offense of involuntary manslaughter, we must now decide what to do about the sentence. In our previous decision, we thought we first had to determine whether to reassess the sentence or send the case back for a rehearing on sentence. *Riley*, 47 M.J. at 609. *See United States v. Jones*, 39 M.J. 315, 317 (C.M.A.1994) ("When

there has been error at the court-martial, the Court of [Criminal Appeals] must try to determine what the sentence would have been absent the error. If the court cannot make such a determination, then it must order a rehearing." (citations omitted)). In the past, we applied the *Jones* test after finding a specification factually insufficient. *See, e.g., United States v. Thomas,* 38 M.J. 614, 626 (A.F.C.M.R.1993); *United States v. Guron,* 37 M.J. 942, 952 (A.F.C.M.R.1993). We believe this was incorrect, and we shall not do so now.

We did not disapprove the appellant's conviction of unpremeditated murder because the evidence was legally insufficient to sustain the conviction or the military judge committed error to the prejudice of the appellant's substantial rights. Instead, we held the evidence insufficient to convince this Court beyond a reasonable doubt of the appellant's guilt of unpremeditated murder. When we substitute our judgment on findings for those of the court members, it makes no sense to try to determine what the court members would have done had they come to the same conclusion as we did. We believe under these circumstances, it is appropriate to reassess the sentence on our own. After carefully reviewing the entire record, we are convinced the appropriate sentence is a dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to E–1.

The modified findings and sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge SPISAK and Judge HEAD concur.