UNITED STATES, Appellee

v.

Leslie D. RILEY, Airman
U.S. Air Force, Appellant

No. 98-0146

Crim. App. No. 32183

_____

United States Court of Appeals for the Armed Forces

Argued November 5, 2002

Decided June 23, 2003

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., EFFRON, BAKER, and ERDMANN, J.J., joined.

<u>Counsel</u>

For Appellant:  Major Karen L. Hecker (argued); Colonel Beverly
   B. Knott, Major Terry L. McElyea, and Major Patricia A.
   McHugh (on brief).

For Appellee:  Major Jennifer R. Rider (argued); Lieutenant
   Colonel Lance B. Sigmon and Lieutenant Colonel LeEllen
   Coacher (on brief).

Military Judge:  Terence A. Curtin

   **This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to her pleas, of the unpremeditated murder of her newborn baby girl, in violation of Article 118, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 918 (2000).[1]  The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for 25 years, total forfeitures, and reduction to the lowest enlisted grade.  In three successive appellate decisions, two of them after remands from this Court, the Court of Criminal Appeals set aside the murder conviction, affirmed a conviction of the lesser-included offense of involuntary manslaughter in violation of Article 119, UCMJ, 10 U.S.C. § 919 (2000), and affirmed a sentence of dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to the lowest enlisted grade.  United States v. Riley, 47 M.J. 603 (A.F. Ct. Crim. App. 1997) [hereinafter Riley I], rev'd, 50 M.J. 410 (C.A.A.F. 1999), modified and aff'd, 52 M.J. 825 (A.F. Ct. Crim. App. 2000) [hereinafter Riley II], rev'd 55 M.J. 185 (C.A.A.F. 2001), modified and aff'd, 56 M.J. 551 (A.F. Ct. Crim. App. 2001) [hereinafter Riley III].

---

[1] The court members initially convicted Appellant of premeditated murder. During the sentencing hearing, the defense submitted an affidavit from the psychiatrist who had been the president of a sanity board convened to evaluate Appellant's mental responsibility.  Among other things, the psychiatrist opined that Appellant, who was 19 years old at the time of the sanity board, was "operating on the maturity level of a 12 or 13 year old," that she was "genuinely remorseful over the death of her infant," and that "[s]he exhibited signs of acute depression and grief" so severe that at times it was necessary to stop the evaluation because she "simply could not continue."  The psychiatrist's evaluation of Appellant caused the court members to reconsider their findings.  On reconsideration, the court members reduced their findings from premeditated murder to unpremeditated murder.

## I. Factual Background

On April 7, 1995, Appellant went to the base hospital, complaining that she was cramping, spotting, and had not had a menstrual cycle for six months. She was examined by an emergency room physician, who gave her a painkiller. Twelve days later, on April 19, Appellant returned to the same physician, complaining of cold symptoms, nausea, and tightness in her chest. The physician gave her breathing treatments, a decongestant, and an antibiotic.

At some time during April 1995, Appellant administered a home pregnancy test to herself, and the result was positive. She talked about the positive result to a "couple of friends," who opined that they did not think she could be pregnant. She did not seek medical confirmation of her pregnancy because she "didn't even want to think that [she] was pregnant." When the criminal investigators asked her why she did not seek a medical confirmation whether she was pregnant, she responded, "I didn't want to be pregnant so I didn't want to find out, so I just didn't do it."

On July 3, 1995, Appellant returned to the base hospital in severe pain, and she told the emergency room technicians that she had hurt her back playing racquetball. A contract physician gave her a painkiller. While Appellant was waiting to be released, she doubled over in pain and began crying. The technicians asked another physician to examine her. This physician drew blood for a pregnancy test.

While awaiting the results of the pregnancy test, Appellant went into a bathroom adjacent to the examining room. The

emergency room technicians could hear her, softly moaning and crying. Twice, they knocked on the door. The first time, Appellant said she should be out in a few minutes. The second time, she said she had been sick and needed a mop. Appellant gave birth to a baby girl in the bathroom, but she did not tell anyone.

The baby girl was later found dead in the bathroom trash can. The bathroom floor was covered with blood. There was blood spattered on the walls and bloody footprints on the floor. Appellant's t-shirt showed the outline of an infant held against her chest with its head near her left shoulder.

Appellant was subsequently hospitalized. On July 4, 1995, while she was receiving a blood transfusion, she was questioned by Detective Roger Joe Berry, a member of the Abilene, Texas, Police Department, and Special Agent Chuck Roseberry, a member of the U.S. Air Force Office of Special Investigations. The questioning was tape-recorded and played for the members at her court-martial.

Appellant told the investigators that she did not realize she was giving birth when she went to the bathroom. She told them: "I didn't know what was wrong. And then I start to push like instinctly [sic], and I looked down and there was hair that wasn't mine there. So I just kept on pushing. It dropped on the floor." She told the investigators that she pushed two or three times and the baby kept coming out "little by little," but on the third time, the baby's head and the rest of the body went through. According to Appellant, the baby "like squirted out. After I pushed, whoosh." She said, "I didn't have any chance to

catch it, or anything. I didn't know it was coming that quick."
She said the baby "cracked its head. It was dead . . . it never
moved."

An expert witness testified for the defense that a woman
will feel a strong need for a bowel movement when the first urge
to push comes during labor. The witness also testified that an
unassisted birth will produce an "explosive" delivery.

The cause of the baby's death was determined to be a blunt
force crush of the skull. The medical examiner opined that the
most likely cause of the skull fracture was one or more impacts
of the skull against a hard flat surface with significant force.

The prosecution theory at trial was that Airman Riley
intentionally killed her baby girl by smashing or crushing her
skull. The defense theory was that the baby was killed when she
fell to the floor during the birthing process, through no fault
of Appellant.

The military judge proposed to instruct on the lesser-
included offenses of voluntary and involuntary manslaughter and
negligent homicide. He proposed to instruct that an element of
the lesser-included offenses was that Appellant "failed to
prevent the fracture of Baby Girl Riley's skull or failed to
summon medical assistance which was immediately available for the
infant." The defense objected to any instruction on culpable
negligence by failure to act, arguing that the Government had
charged Appellant with a culpable act but not a culpable failure
to act. The prosecution agreed in part, informing the military
judge that it had not tried the case on the theory that Airman
Riley was culpable for failure to summon medical assistance, and

that it did not intend to argue that theory.  The military judge did not instruct on culpable negligence by failure to act,  and he specifically directed the court members to delete the reference to a culpable failure to act from the written instruction that had been provided to them.

In contrast to his instruction on involuntary manslaughter, the military judge instructed the members that an element of the negligent homicide was that the baby's death "resulted from the act or failure to act" of Appellant.  However, he further instructed them that Appellant's "failure to summon medical assistance may not, as a matter of law, constitute the negligent act or failure to act set out above."

Three decisions of the Air Force Court of Criminal Appeals have affirmed a conviction of involuntary manslaughter on three different bases: impeding medical assistance (Riley I); stuffing a paper towel into the baby's mouth and applying force to the baby's skull in a gross and reckless manner (Riley II); and choosing to give birth while seated on a toilet seat despite the risk of the baby falling to the floor (Riley III).  Riley III is now before this Court for review of four issues raised by Appellant and three issues specified by this Court.  The granted issues are:

I.  WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN A CONVICTION IN THIS CASE OR WHETHER THE AIR FORCE COURT'S THIRD REVIEW OF THIS CASE WAS ERRONEOUS BECAUSE:

A.  THE AIR FORCE COURT HAD PREVIOUSLY CONCLUDED THAT THE EVIDENCE WAS INSUFFICIENT TO DETERMINE HOW THE BABY'S SKULL WAS FATALLY FRACTURED; AND/OR

B.  DEATH IS NOT A FORESEEABLE CONSEQUENCE OF AN UNATTENDED CHILDBIRTH;

C.  THE NEGLIGENCE OF THE AIR FORCE DOCTORS WHO TREATED APPELLANT WAS A SUFFICIENT INTERVENING PROXIMATE CAUSE TO RELIEVE HER OF CRIMINAL LIABILITY; AND/OR

D.  THE AIR FORCE COURT HAD ALREADY CONCLUDED THAT DROPPING THE BABY ON THE FLOOR WOULD CONSTITUTE SIMPLE NEGLIGENCE, NOT CULPABLE NEGLIGENCE.

II.  WHETHER THE AIR FORCE COURT APPLIED THE IMPROPER STANDARD WHEN EVALUATING THE FACTUAL SUFFICIENCY OF THE EVIDENCE.

III.  WHETHER THE AIR FORCE COURT ERRED WHEN IT REFUSED TO FOLLOW THIS COURT'S MANDATE REQUIRING A SENTENCE REHEARING AND WHEN IT THEN IMPROPERLY APPLIED THIS COURT'S PRECEDENTS IN REASSESSING THE SENTENCE.

In addition, we specified the following issues:

IV.  WHETHER THE AIR FORCE COURT'S REASSESSMENT OF THE SENTENCE BY AGAIN AFFIRMING THE MAXIMUM SENTENCE CONSTITUTES AN OBVIOUS MISCARRIAGE OF JUSTICE OR ABUSE OF DISCRETION.

V.  WITH RESPECT TO FINDINGS OF FACT MADE BY A COURT OF CRIMINAL APPEALS UPON INITIAL REVIEW THAT ARE RELEVANT TO THE LEGAL OR FACTUAL SUFFICIENCY OF FINDINGS OF GUILT, WHAT IS THE AUTHORITY, IF ANY, FOR THE COURT OF CRIMINAL APPEALS TO RECONSIDER AND MAKE MATERIAL ALTERATIONS IN SUCH FINDINGS UPON REMAND IN THE COURSE OF APPROVING A FINDING OF GUILT?

VI.  WITH RESPECT TO THE ACTIONS OF THE COURT OF CRIMINAL APPEALS SUBSEQUENT TO THE INITIAL REMAND FROM THIS COURT (50 M.J. 410):

A.  HAS THE COURT OF CRIMINAL APPEALS DEMONSTRATED THAT THE FINDINGS OF FACT IN ITS INITIAL DECISION (47 M.J. 603) WERE CLEARLY ERRONEOUS OR OTHERWISE INVALID AS A MATTER OF LAW?

B.  HAS THE COURT OF CRIMINAL APPEALS DEMONSTRATED THAT ITS ACTIONS HAVE BEEN CONSISTENT WITH MANDATES OF THIS COURT?

VII.  ASSUMING THE FINDINGS OF FACT IN THE INITIAL DECISION OF THE COURT OF CRIMINAL APPEALS MUST BE APPLIED WITHOUT MATERIAL MODIFICATION DURING FURTHER APPELLATE CONSIDERATION OF THIS CASE, IS THERE ANY OFFENSE THAT MAY BE AFFIRMED BASED UPON THOSE INITIAL FINDINGS OF FACT?

For the reasons set out below, we affirm only so much of the decision below in Riley III as affirms a finding of guilty of negligent homicide in violation of Article 134, UCMJ, 10 U.S.C. §

7

934 (2000). We set aside the sentence and order a sentence rehearing.

## II. Discussion

The granted and specified issues in this case fall into five categories: (1) Whether the lower court had authority to reconsider and modify its findings of fact in Riley II (Issues V and VI-A); (2) Whether the lower court has complied with the terms of this Court's remand (Issue VI-B); (3) Whether the evidence is legally sufficient to support a conviction of any offense (Issues I and VII); (4) Whether the lower court applied the correct test for factual sufficiency of the evidence in Riley III (Issue II); and (5) Whether a sentence rehearing is required (Issues III, IV, and VI-B).

### A. Reconsideration of Facts on Remand (Issues V and VI-A)

In its initial review, Riley I, the Court of Criminal Appeals set aside the murder conviction on the ground that it was not satisfied beyond a reasonable doubt that Appellant was guilty of unpremeditated murder. The court commented, "None of the physical evidence or expert testimony presented in this case persuade us to accept any one of the many possible explanations for the injuries." 47 M.J. at 608. The court stated that it was not convinced beyond a reasonable doubt that Appellant fractured her baby's skull with the intent to kill or inflict great bodily harm. Id.

The court affirmed a lesser-included offense of involuntary manslaughter through culpable negligence, in violation of Article 119, based on Appellant's "disregard for the foreseeable consequences of refusing and impeding assistance in the delivery

and care of her child[.]" Id. It reassessed the sentence and
affirmed a sentence to a dishonorable discharge, confinement for
10 years, total forfeitures, and reduction to the lowest enlisted
grade, the maximum sentence for involuntary manslaughter. See
Manual for Courts-Martial, United States (2002 ed.) Part IV,
para. 44.e.(2) [hereinafter MCM].

On review of Riley I, our Court held that an appellate court
violates due process if it affirms an included offense on a
theory not presented to the trier of fact. Our Court explained:

> Like the theory that [A]ppellant failed to summon
> medical assistance, which was expressly disclaimed by
> the prosecution, this theory of intentional prevention
> of medical intervention was not asserted by the
> prosecution and was never submitted to the trier of
> fact. Thus, [A]ppellant was never given an opportunity
> to defend against it.

50 M.J. at 416.

In light of the lower court's comment in Riley I that none
of the evidence persuaded it to accept any one of the possible
explanations for the baby's death, it was not clear "whether that
court also found the evidence factually insufficient to support a
conviction of a lesser-included offense premised on negligent
infliction of the fatal injuries on the baby." Id. Accordingly,
our Court remanded the case for clarification and
"reconsideration consistent with the principles of due process
set out above." Id. Our reference to due process precluded the
court below from considering any withholding of medical care as a
basis for affirming any offense. Id.

On remand, Riley II, the court below reconsidered its
previous findings of fact, held that some of its findings of fact
in Riley were clearly erroneous, and modified its findings. The

9

lower court then found beyond a reasonable doubt that Appellant stuffed a paper towel into her baby's mouth and applied force to the baby's skull in a gross and reckless manner. The court again affirmed a conviction of involuntary manslaughter by culpable negligence and affirmed the sentence. 52 M.J. at 828-30.[2]

On review of Riley II, this Court held that the Air Force court's reconsideration and modification of its previous findings of fact was beyond the scope of the remand and, therefore, this Court again reversed and remanded the case for clarification. 55 M.J. at 189; see United States v. Montesinos, 28 M.J. 38, 44 (C.M.A. 1989)(lower court's authority on remand is limited by the limitations and conditions prescribed by the remand).[3] Thus, in accordance with our remand, we review Riley III based on the facts found by the court below in Riley I, except for those facts pertaining to withholding of medical care.

### B. Compliance with the Remand (Issue VI-B)

In Riley I, the Air Force court recited that Appellant sat on the toilet in the clinic restroom, instinctively "pushed two

---

[2] While Riley II was under advisement by the Air Force court, Appellant filed a petition for habeas corpus with that court, which was denied. Appellant then filed a writ-appeal petition with this Court, United States v. Riley, 55 M.J. 467 (C.A.A.F. 2001), which was denied without prejudice on September 12, 2001. United States v. Riley, 56 M.J. 144, 144-45 (C.A.A.F. 2001). Appellant filed a habeas corpus petition with this Court on October 6, 2001. United States v. Riley, 56 M.J. 206 (C.A.A.F. 2001). On September 17, 2002, this Court granted her request to withdraw the habeas corpus petition as moot, since she was released from confinement on August 25, 2002, having reached the minimum release date for her 10-year term of confinement. United States v. Riley, 57 M.J. 436 (C.A.A.F. 2002).

[3] The timely filing of a petition for review vests jurisdiction in this Court and divests the Court of Criminal Appeals of jurisdiction to reconsider its decision. United States v. Jackson, 2 C.M.A. 179, 181, 7 C.M.R. 55, 57 (1953). This Court may, however, return jurisdiction to the lower court by a remand. Id. at 182, 7 C.M.R. at 58. See Rules for Courts-Martial 1203(d)(2)(B) discussion ("The placing of a petition for review in proper military channels divests the Court of Criminal Appeals of jurisdiction over the case, and jurisdiction is thereby conferred on the Court of Appeals for the Armed Forces.").

or three times, then the baby 'squirted out' onto the floor." 47
M.J. 603. In Riley III, the Air Force court amplified this
recital with facts contained in Appellant's statement to the
criminal investigators. The court found that, while Appellant
was sitting on the toilet, she looked down and saw "hair that
wasn't" hers. She removed her underwear, shorts, and sneakers.[4]
She pushed again and a baby girl "squirted out" onto the hard
tile bathroom floor . . . . Appellant ripped the umbilical cord
from the child and discarded her in the trashcan.[5] 56 M.J. at
553. The Air Force court again affirmed a conviction of
involuntary manslaughter, based on the following rationale:

> [A]ppellant gave birth to a child, delivering her head-
> first onto the hard ceramic tile on the bathroom floor.
> The resulting crush-fracture of the skull was the
> proximate cause of the baby's death. Choosing to
> deliver the child from the toilet seat onto the hard
> tile floor was more than an absence of due care. It
> was an act in total disregard for the baby's safety
> and, when viewed in the light of human experience,
> might foreseeably have resulted in the death of the
> child.

Id. at 555.

In Riley I, the Air Force court did not reject any of the
explanations for the baby's injuries, but stated that it could

---

[4] There is no direct evidence that Appellant removed her clothing before or
during birth. However, this finding of fact is a fair inference from the
physical evidence in the bathroom. Appellant's underpants were found "in the
immediate vicinity of the body," and they were not heavily bloodied. Her
sneakers were lightly spattered with blood, but there were only bare
footprints and no shoeprints in the bathroom.

[5] The transcript of Appellant's responses to the criminal investigators
reflects that when asked how she separated the umbilical cord, she responded,
"I ripped it. I pinched it." She explained that after she separated the
umbilical cord, she knelt on the floor and tried various measures to determine
whether her baby was dead. Once she concluded that her baby was dead, she put
her in the trash can. When asked why she put her dead baby in the trash can,
she responded, "It was, it was dead. Where was I supposed to put it? What
was I supposed to do with it?" Thereafter, she repeatedly said, "I didn't
kill my baby."

not determine which explanation to accept.  The facts described in Riley III are a reasonable and permissible clarification regarding the immediate cause or causes of the baby's injuries. The additional facts found by the Air Force court in Riley III are not inconsistent with Riley I.  Thus, we hold that the Air Force court's decision in Riley III complies with this Court's remand.

### C. Legal Sufficiency of the Evidence (Issues I and VII)

The elements of involuntary manslaughter by culpable negligence are as follows:

> (1) "That a certain named or described person is dead";
>
> (2) "That the death resulted from the act or omission of the accused";
>
> (3) "That the killing was unlawful"; and
>
> (4) "That this act or omission of the accused constituted culpable negligence[.]"

MCM Part IV, para. 44.b.(2).  MCM Part IV, para. 44.c.(2)(a)(i) defines culpable negligence as follows: "Culpable negligence is a degree of carelessness greater than simple negligence.  It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission." We apply an objective test in determining whether the consequences of an act are foreseeable.  See United States v. Oxendine, 55 M.J. 323, 326 (C.A.A.F. 2001).

Negligent homicide in violation of Article 134 is a lesser included offense of involuntary manslaughter.  The elements of this offense are as follows:

> (1) That a certain person is dead;

> (2) That this death resulted from the act or failure to act of the accused;
>
> (3) That the killing by the accused was unlawful;
>
> (4) That the act or failure to act of the accused which caused the death amounted to simple negligence; and
>
> (5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM Part IV, para. 85.b.  MCM Part IV, para. 85.c.(2) defines simple negligence as follows:

> Simple negligence is the absence of due care, that is, an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care of the safety of others which a reasonably careful person would have exercised under the same or similar circumstances.

The test for legal sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Legal sufficiency is a question of law, reviewed de novo.  United States v. Tollinchi, 54 M.J. 80, 82 (C.A.A.F. 2000).

Appellant first argues that the evidence was insufficient to determine how the baby's skull was fractured.  She bases her argument on the Air Force court's statement in Riley I that it was not persuaded to accept any one of the many explanations for the baby's injuries.

The essential element in question is a specific act of negligence that was the proximate cause of the baby's death. Riley III concluded that the negligent act was Appellant's delivery of her baby while sitting on a toilet with nothing

13

beneath her but a hard ceramic tile floor.  The court's findings and conclusions in Riley I are not in conflict with that conclusion.  Once the court in Riley III reached a legal conclusion that the evidence was sufficient as a matter of fact and law to establish Appellant's negligence as the proximate cause of death, it was not necessary for the court to make any further determination as to the specific cause of death.

We turn next to the sufficiency of the evidence of culpable negligence.  In light of this Court's holding in Riley I that any finding of culpability based on intentional prevention of medical intervention was barred by due process, this Court may not consider, in evaluating the sufficiency of the evidence of negligence, Appellant's decision not to summon medical assistance when she realized that she was about to give birth in the clinic bathroom.  We may consider, however, that Appellant realized while she was in the bathroom that she was about to give birth.  She was in sufficient control of her mental and physical faculties to remove her clothing and shoes.  Knowing that childbirth was underway, she chose to sit on the toilet seat.

Based on these facts, we hold that a reasonable factfinder could find beyond a reasonable doubt that it was negligent for Appellant to position herself on the toilet seat instead of on the floor, where the danger of injury to her baby would have been lessened.  We further hold that a reasonable factfinder could find beyond a reasonable doubt that Appellant's negligence "play[ed] a material role in the victim's decease."  United States v. Romero, 1 M.J. 227, 229 (C.M.A. 1975), cited with approval in United States v. Gordon, 31 M.J. 30, 35 (C.M.A.

1990).  Thus, we hold that the evidence is legally sufficient to support a conviction of negligent homicide in violation of Article 134.

We are not satisfied, however, that a reasonable factfinder could conclude that Appellant's negligence rose to the level of culpable negligence, i.e., a culpable disregard for the foreseeable consequences to her baby.  An experienced medical professional would be aware of the potential for an explosive and unexpected birth, sufficient to suddenly propel the baby onto the hard floor, and consequently would be likely to foresee death as a consequence of Appellant's acts.  This case, however, does not involve an experienced medical professional.  Instead, it involves an inexperienced, immature lay person, giving birth for the first time.  We do not believe that a reasonable factfinder could find beyond a reasonable doubt that Appellant culpably disregarded the likelihood of the sudden and explosive birth of her baby and her baby's death as a consequence of her acts.  Thus, we hold that the evidence in this case was legally insufficient to support a conviction of involuntary manslaughter in violation of Article 119, because a reasonable factfinder could not find "a culpable disregard for the foreseeable consequences to others" beyond a reasonable doubt.

Finally, we reject Appellant's argument that the failure of the doctors to diagnose Appellant's pregnancy was an intervening proximate cause of the baby's death sufficient to relieve Appellant of criminal liability.  Even if the doctors negligently failed to diagnose Appellant's pregnancy on April 7, April 19, and July 3, their negligence was, at best, a contributing cause.

They did not intervene between Appellant's "negligent birthing" and the ultimate death of her baby. See United States v. Cooke, 18 M.J. 152, 154-55 (C.M.A. 1984)(discussing differences between contributing and intervening proximate cause). Even if Appellant did not know that she was in labor when she went into the bathroom, she admitted that she saw the baby's head emerge while she was sitting on the toilet. After she realized that she was giving birth, she chose to remain in a position that significantly increased the danger to the baby. Notwithstanding any negligence by the doctors before she went into labor, her lack of due care for the safety of her baby, once labor began, "play[ed] a material role in the victim's decease." Romero, 1 M.J. at 229.

### D. Test for Factual Sufficiency (Issue II)

In Riley III, the Air Force court concluded that the evidence supporting the conviction of involuntary manslaughter was factually sufficient "whether we apply the test mandated by Congress or that decreed by the [Court of Appeals for the Armed Forces]." 56 M.J. at 555. Thus, we hold that the issue whether the Air Force court applied the correct test is moot, because the Air Force found the evidence factually sufficient under either test. United States v. Washington, 57 M.J. 394, 399 (C.A.A.F. 2002).

### E. Sentence Rehearing (Issues III, IV, and VI-B)

In light of the dramatic change in the "penalty landscape" in this case, we do not believe that an appellate court can reliably determine what sentence the members would have imposed. The court members considered a maximum sentence including life

imprisonment but imposed a term of 25 years.  The maximum term of confinement is now three years.  MCM Part IV, para. 85.e.  The offense has been reduced from an intentional killing to an act of simple negligence resulting in death.  We conclude that the only "fair course of action" is a sentencing rehearing.  See United States v. Harris, 53 M.J. 86, 88 (C.A.A.F. 2000).

### III. Decision

Only so much of the decision of the United States Air Force Court of Criminal Appeals is affirmed as affirms a finding of guilty of negligent homicide in violation of Article 134.  In all other respects, the decision below is reversed, and the sentence is set aside.  The record of trial is returned to the Judge Advocate General of the Air Force for a rehearing on the sentence.  In the event that a rehearing on the sentence is impracticable, a sentence of no punishment may be approved.