# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, B.T. PALMER, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JUSTIN M. MOHEAD**
**CULINARY SPECIALIST THIRD CLASS (E-4), U.S. NAVY**

**NMCCA 201400403**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 10 Jul 2014.
**Military Judge:** CDR John Han, JAGC, USN.
**Convening Authority:** Commander, Navy Region Mid-Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation:** CDR S.J. Gawronski, JAGC, USN.
**For Appellant:** LT David Warning, JAGC, USN.
**For Appellee:** Maj Suzanne Dempsey, USMC; LCDR Keith Lofland, JAGC, USN.

**29 October 2015**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

CAMPBELL, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of an abusive sexual contact and two sexual assault specifications in violation of Article 120 Uniform Code of

Military Justice, 10 U.S.C. § 920.[1]  The sentence by the members—three years' confinement, reduction to pay grade E-1, total forfeiture of pay and allowances, and a bad-conduct discharge—was approved by the convening authority (CA) and ordered executed, except for the punitive discharge.

The appellant raises six assignments of error (AOEs):  (1) insufficient evidence supports the conviction of abusive sexual contact; (2) the military judge should have instructed the members on mistake of fact as to consent for the abusive sexual contact; (3) insufficient evidence supports the conviction of sexual assault of a victim incapable of consenting; (4) the military judge abused his discretion by failing to dismiss one of the two sexual assault convictions based on a single criminal act; (5) the CA engaged in systematic exclusion of potential members based on rank; and (6) the Government improperly failed to disclose the CA's member selection instruction.

After carefully considering the record of trial and parties' submissions, we find merit in the third AOE.  Taking corrective action in our decretal paragraph, we conclude the remaining findings and sentence are correct in law and fact, and no error materially prejudicial to the appellant's substantial rights remains.  Arts. 59(a) and 66(c), UCMJ.

## I.  Background

The appellant and H.C. had been close friends for years, and H.C. considered and referred to the appellant as her brother.  During July 2012 H.C. visited the appellant at Naval Station Norfolk.  While the appellant worked, H.C. watched TV in his barracks room and at night slept on an inflatable mattress at the foot of his bed.  Another of the appellant's civilian friends, W.J., also stayed in the barracks room throughout H.C.'s visit and slept on the floor.  W.J. testified he never observed romantic interactions between the appellant and H.C., and described theirs as a brother/sister relationship.

One evening H.C. lay on her side on the appellant's bed watching TV.  The appellant lay down behind her and rubbed her thigh and buttocks with his hand.  Not understanding or approving, she looked at him and asked what he thought he was doing.  He immediately stopped.

---

[1] The appellant was found not guilty of communicating a threat in violation of Article 134, UCMJ, 10 U.S.C. § 934.

On another evening, H.C. and the appellant planned to hang out with W.J. and another friend, Petty Officer J.S., in the appellant's room. W.J. did not drink. The others played drinking games and consumed vodka shots and mixed drinks made with several hard liquors. W.J. testified H.C. drank eight shots and five or six Solo cup-sized mixed drinks until she became very drunk.[2] As the appellant concedes, H.C. became intoxicated to the point of vomiting and blacking out in the bathroom before the appellant carried her to his bed.[3] According to W.J., that may have happened as early as 9 p.m. and as late as 2 a.m. Although drunk, H.C. insisted she could still sleep on the air mattress, but the appellant told her she was sleeping in the bed. It then appeared to W.J. that H.C. passed out in bed. Then W.J. played video games on the air mattress as the appellant laid in the bed facing away from H.C.[4] Sometime around 3 a.m., the appellant told W.J. to get some rest. Once he turned off the video game, W.J. heard H.C. snoring in the bed.

W.J. did not fall asleep. He later heard the bed creaking. He "could kind of see [the appellant] over the top of her" moving "up and down or back and forth," as H.C.'s arm hung over the edge of the bed.[5] Eventually, W.J. heard H.C. moan and say, "'We're being bad.' Then there was, 'What are we doing?' And then it was like, you know, 'Stop.' Because like, 'you're supposed to be my brother and you are not supposed to do this like with me. You're supposed to protect me, that's what you said you would do. Stop.'"[6] After H.C. began crying, W.J. heard the appellant tell her to shut up before the appellant finally got up and went to the bathroom. W.J. testified H.C. then came to the foot of the bed and asked if he was awake, went to the bathroom when the appellant came out, got dressed, and left. W.J. followed her out of the room to a terrace. It was sunrise by then,[7] and H.C. "seemed more so sobered up, was able to like, talk more clearly, walked more upright, and could sit up straight."[8] The two spoke between H.C.'s phone conversations.

---

[2] Record at 521-23.

[3] Appellant's Brief of 9 Feb 2015 at 4.

[4] Record at 528.

[5] *Id.* at 529-30.

[6] *Id.* at 531.

[7] *Id.* at 542.

[8] *Id.* at 556.

H.C.'s recollection of the assault begins with her being carried from the bathroom to the bed and sometime later realizing the appellant was on top of her having sex.[9] She remembered telling the appellant what was happening was bad, it was not what she wanted, no, and stop.[10] In response to her protests asking her "brother" to stop, H.C. testified the appellant replied, "'[n]o, we're not, shh, be quiet, shut up' things like that[.]"[11] H.C. further described their exchange:

> I cried. I talked—I tried to reason with him to get him to stop, because there was so many factors as to why this was so wrong, you know, him being friends with my estranged boyfriend who I still wanted to work things out, but still you know their friendship and then, I just, I kept trying to talk to him about, you know, I said, "What about [J]?" And he said, "Look at this as a way to get back at him." He had a comeback for everything I tried to say, and he kept going.[12]

## II. Discussion

### A. Abusive Sexual Contact Specification

The appellant asserts there is insufficient evidence to sustain the abusive sexual contact conviction, and that the military judge should have granted the requested mistake of fact instruction for the specification.

### (1) *Legal and Factual Sufficiency*

We review each case *de novo* for legal and factual sufficiency. Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is whether, considering the evidence admitted at trial in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not

---

[9] *Id.* at 403.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 404.

4

having personally observed the witnesses, [this court is] convinced of the accused's guilt beyond a reasonable doubt." *Id.* at 325. We may judge the credibility of witnesses, determine controverted questions of fact, and substitute our judgment for that of the fact finder. Art 66(c), UCMJ; *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990).

H.C. testified the appellant committed a sexual contact upon her in that he touched her buttocks with his hand in a rubbing, caressing fashion until she stopped him, and that the touching was nonconsensual, causing bodily harm. There is no evidence H.C. consented. In his appellate brief, the appellant suggests he held an honest belief about H.C.'s desire to engage in sexual contact based on her traveling from out of state to visit him for a few weeks, staying in his barracks room, going to the movies and watching TV in his room with him, and laying on the same bed with him when he touched her thigh and buttocks.[13] We are not persuaded such a belief, if honestly held, was objectively reasonable when viewed in the context of their long, close, siblings-like relationship. The appellant and H.C. had no previous romantic interactions, she slept on an air mattress while he slept in his barracks room bed, and she referred to him as her brother. Rather than flirting by being on the bed, H.C. indicated she was watching Olympic coverage there and did not move after the appellant lay behind her only because of space constraints in the room. As a reasonable factfinder could have found the touching was done with the intent to arouse or gratify sexual desire, the conviction for abusive sexual contact is legally sufficient. Weighing H.C.'s testimony, and making allowances for not having observed the witness, we are also convinced beyond a reasonable doubt that the abusive sexual contact conviction is factually sufficient.

**(2) *Mistake of Fact Instruction***

Whether the members were properly instructed is a question of law we review *de novo*. *United States v. Hibbard,* 58 M.J. 71, 75 (C.A.A.F. 2003). A military judge is required to instruct the members on affirmative defenses "in issue." *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007) (citing RULE FOR COURTS-MARTIAL 902(e)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.)). "A matter is considered 'in issue' when 'some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose.'" *Id.* (quoting R.C.M. 920(e), Discussion. An accused can establish a mistake of fact

---

[13] Appellant's Brief at 15-16.

defense where he can show that he had a reasonable and honest, if mistaken, belief that the victim consented. R.C.M. 916(j). If a military judge errs in not instructing on an affirmative defense, we then look to "whether it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Neder v. United States*, 527 U.S. 1, 18 (1999); *see also United States v. DiPaola*, 67 M.J. 98 (C.A.A.F. 2008).

We agree with the military judge's determination that none of the evidence cited by the appellant indicates he held a mistaken belief about H.C.'s desire to engage in sexual activity. However, even if some evidence raised the affirmative defense and the military judge erred by not providing a mistake of fact instruction, we are convinced the error was harmless beyond a reasonable doubt. Since the bodily harm element required the members to determine whether H.C. consented to the touching, they were instructed that "[l]ack of consent may be inferred based on the circumstances. All the surrounding circumstances are to be considered in determining whether a person gave consent or whether a person did not resist or cease to resist only because of another person's actions."[14] Although the appellant argued in summation that H.C.'s conduct demonstrated consent and that the appellant's actions were not criminal,[15] the members convicted. Even if provided a mistake of fact instruction, we conclude beyond a reasonable doubt that rational members would have found the appellant guilty of this offense.

## B. Sexual Assault Specifications

The appellant's two sexual assault specifications differed only in that the first alleged H.C. "was incapable of consenting to the sexual act due to impairment by alcohol, and that condition was known or reasonable [sic] should have been known by the accused," and the second alleged the sexual act occurred "when the accused knew or reasonably should have known that [H.C.] was asleep, unconscious, or otherwise unaware of the sexual act." There was no allegation of committing a sexual act by causing bodily harm. As the Government argued the two specifications were separate crimes occurring before and after H.C. awoke during the sexual encounter, the military judge did not merge them for findings. But after the members announced

---

[14] Record at 649.

[15] *Id.* 676-77.

6

guilty findings for both, the military judge instructed them to consider the two specifications as one offense for purposes of determining an appropriate sentence.[16] In AOE III, the appellant contends the record does not support the victim's incapability to consent due to alcohol impairment and that her condition was known or reasonably should have been known by the appellant. Our finding in the appellant's favor renders AOE IV moot.

**(1)** *Legal and Factual Sufficiency*

The record demonstrates, and as the appellant concedes in his brief, H.C. was intoxicated and asleep before the appellant began sexual intercourse.[17] It is unclear how many hours elapsed between the appellant carrying H.C. to bed and assaulting her. But H.C.'s actions upon waking indicate she was then capable of consenting despite the earlier alcohol consumption. While trying to "reason with" the appellant, she articulated her clear understanding of what was happening, that she thought it was wrong, and that she did not consent. While his actions may have constituted a different sort of sexual assault, based on this record and these facts we are not convinced beyond a reasonable doubt of the appellant's guilt for Specification 1. Thus we will set aside the finding and dismiss that specification.

(2) *Sentence Reassessment*

We reassess the sentence in accordance with the principles set forth in *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), *United States v. Cook*, 48 M.J. 434, 438, (C.A.A.F. 1998), and *United States v. Sales*, 22 M.J. 305, 307-09 (C.M.A. 1986). Although a "'dramatic change in the penalty landscape' gravitates away from the ability to reassess" a sentence, *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (quoting *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003)), there is no such change here. The maximum punishment[18] remains the same. Testimony regarding H.C.'s interaction with the appellant once she awoke was proper sentencing evidence in aggravation under R.C.M. 1001(b). Thus we are confident the members would have imposed, and the CA would have approved, the previously adjudged sentence in this case.

---

[16] *Id*. at 789.

[17] Appellant's Brief at 19.

[18] When the military judge merged the sexual assault specifications for sentencing, the maximum punishment was 37 years' confinement, total forfeitures, a fine, reduction to pay grade E-1, and dishonorable discharge.

7

## C.  Member Selection and Discovery

The final two AOEs argue the CA systematically excluded all potential members other than those in pay grades E-5 through E-9 and O-1 through O-6 via the CA's nomination process instruction, and that the Government failed to disclose the instruction as required.

### (1)  *Panel Member Selection*

We review the proper selection of a court-martial panel *de novo*.  *United States v. Kirkland*, 53 M.J. 22, 24 (C.A.A.F. 2000) (citing *United States v. McClain*, 22 M.J. 124 (C.M.A. 1986)). We look at three primary factors to determine whether an impermissible member selection has taken place: (1) Improper motive in packing a member pool; (2) Systematic exclusion of potential members based on rank or other impermissible variable; and, (3) Good faith attempts to be inclusive and open the court-martial process to the entirety of the military community. *United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004).  If either of the first two criteria is present, the process is impermissible.  *Id.*  These criteria are not only considered in the actual panel selection process, but also when presenting nominations to the CA.  *United States v. Roland*, 50 M.J. 66, 69 (C.A.A.F. 1999).  In a case of systematic exclusion of members by rank, the defense must establish the improper exclusion. *Kirkland*, 53 M.J. at 24.  Once improper exclusion is established, the Government must "demonstrate that the error did not 'materially prejudice the substantial rights of the accused.'" *Dowty*, 60 M.J. at 173 (quoting Art. 59(a), UCMJ).

The standing court-martial panel to which the appellant's charges were referred is dated 9 January 2014.[19]  On 28 February 2014, the CA issued Commander, Navy Region Mid-Atlantic Instruction 5813.1B (hereafter "instruction") concerning courts-martial member nominations.  It requires nomination quotas from listed commands for prospective members in specified pay grades between O-6 and E-5, and otherwise provides, "In addition to the nomination requirements listed in enclosure (1), commands are encouraged to nominate members of any pay grade who possess the qualifications listed in [Article 25, UCMJ] and paragraph 4 above."[20]  The CA detailed the appellant's members on 25 June

---

[19] General Court-Martial Convening Order (GCMCO) 1-14 detailed five O-6s, one O-5, three O-4s and an O-3 to the standing panel.

[20] Instruction at 5.

8

2014.[21]  The appellant's voir dire questions[22] included three about member selection.[23]  The military judge granted the appellant's single challenge for cause.  The Government also successfully challenged one member for cause, with defense concurrence, and exercised the only preemptory challenge.

The appellant argues "Warrant Officers and Chief Warrant Officers . . . precisely the types of members well-suited under the Article 25, UCMJ, criteria based on their lengthy careers and prior enlisted service . . . on the face of the instruction, based on rank alone . . . were systematically excluded from the nomination process."[24]  We disagree.  First, beyond the instruction encouraging member nominations from any pay grade meeting the Article 25 criteria, enclosure (1) of the instruction specifically requires nineteen of the thirty-nine identified commands to submit nominations from members in pay grades "O-3 or below."  Second, the Navy has only Chief Warrant Officers,[25] and those not in the Reserves are commissioned by the President like officers in pay grades O-1 through O-3.[26]  Finally, the CA detailed a Chief Warrant Officer-2 to an unrelated court-martial three months before detailing the appellant's members.[27]  Thus warrant officer ranks may reasonably be considered within "O-3 or below," and the CA and at least one nominating command have interpreted the instruction as allowing warrant officer nominations.

But even if we agreed the CA improperly excluded any potential members, we would find no material prejudice.  In

---

[21] GCMCO 1J-14 relieved each standing panel member and detailed one O-4, three O-3s, three E-8s, one E-7, and two E-6s.

[22] Appellate Exhibit XXII.

[23] 6. Rear Admiral Smith, Commander, Navy Region Mid-Atlantic, is the convening authority in this case.  Does any member believe that RADM Smith expects a particular outcome in this case?  7. Did any member volunteer to serve on this court-martial?  8. Did any member receive an email asking them to serve on a court-martial?  *Id.*

[24] Appellant's Brief at 27.

[25] *See* Chief of Naval Operations Instruction 1420.1B (14 Dec 2009) at Ch. 7, ¶ 11.a, p. 7-14.  Sailors selected for the chief warrant officer program are appointed to CWO2, except E-8s with at least two years' time in grade and E-9s, who are appointed to CWO3 upon completion of the chief warrant officer program.

[26] 10 U.S.C. § 571(b) and 10 U.S.C. § 531(a).

[27] AE L at 1.

9

reviewing this case, including affidavits from the CA and his staff judge advocate, we find: (1) no evidence the instruction was issued with an improper motive; (2) no evidence the CA detailed the members assigned to the appellant's court-martial with an improper motive; (3) the CA was a general court-martial convening authority; (4) the CA was properly advised of his Article 25 responsibilities and knew he could select any member within his region's claimancy, not just those nominated; (5) the CA personally chose the court members from a pool of eligible candidates; (6) the CA was specifically aware he could select members in warrant officer paygrades;[28] and (7) all court members met the criteria in Article 25, UCMJ. We also find no remaining unresolved appearance of impropriety. *See Kirkland*, 53 M.J. at 25; *see also United States v. Ward*, 74 M.J. 225, 228 (C.A.A.F. 2015). Under these circumstances, we are convinced the appellant's case was heard by a fair and impartial panel, and that any error in the member selection process was harmless.

**(2)  *Discovery***

Article 46, UCMJ, grants a military accused the "equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Upon request, an accused is permitted to inspect "papers . . . within the possession, custody, or control of military authorities . . . which are material to the preparation of the defense[.]" R.C.M. 701(a)(2)(A). When assessing potential discovery violations, this court must determine whether the evidence at issue was subject to discovery and, if so, what effect failure to disclose had on the appellant's trial. *United States v. Roberts*, 59 M.J. 323, 325 (C.A.A.F. 2004).

When the appellant either did not make a discovery request or made only a general discovery request, the Government must prove the error was harmless. When the appellant made a specific request for undisclosed information, the Government must show the error was harmless beyond a reasonable doubt. *Roberts*, 59 M.J. at 327. Even where nondisclosure of requested documents is error, a TDC's failure to request a continuance and move to compel the documents can forfeit the issue absent plain

---

[28] "Commands within [Navy Region Mid-Atlantic] could nominate service members of any paygrade at any time, including warrant officers, if they were qualified by reason of age, education, training, experience, length of service and judicial temperament in accordance with Article 25." Government's Motion to Attach filed on 15 May 2015, Vice Admiral D. R. Smith affidavit of 1 May 2015.

10

error.  *See United States v. Avery*, 52 M.J. 496, 498-99 (C.A.A.F. 2000).

The trial case management order (CMO) in this case required discovery requests by 5 May 2014, and responses by 12 May 2014.[29] At the 12 May 2014 arraignment, a week later than originally requested, the military judge noted the discovery dates had been ordered during a previous conference off the record.[30]  The appellant's trial defense counsel (TDC) indicated, "I've not gotten discovery in by May 5th.  We did the CMO on Friday.  I will work that out.  I don't expect there to be any issues."[31]  A defense motion to compel witness production[32] was filed and later withdrawn[33], but there was no motion to compel discovery.

A defense discovery request dated 16 May 2014 seeks "[c]opies of all written materials considered by the CA in selecting the members detailed to the court-martial, including all materials pertaining to persons who were not selected as members . . . ."[34]  The appellant's raw assertion that the Government never provided TDC the instruction[35] leaves several discovery aspects unaddressed:  why was the defense request not submitted, if it was at all, by the court ordered milestone date; did the Government provide any response; why was there no motion to compel discovery; and whether the TDC otherwise got the instruction as a published item on the CA's command website[36] after having litigated a similar issue in another case at a post-trial Article 39a, UCMJ, session?[37]

---

[29] AE I.

[30] Record at 7-8.

[31] *Id.* at 9.

[32] AE VII.

[33] Record at 54.

[34] Appellant's Brief, Appendix 2 at 5.

[35] *Id.* at 30.

[36] "This instruction, along with every other instruction promulgated by CNRMA, is available online....Every region has its own page on the G2 system....Anyone with a Common Access Card can access the G2 system."  CDR S.J. Gawronski affidavit of 4 May 2015.

[37] Representing AT1 R.L. on 11 March 2014, the appellant's TDC participated in a post-trial Article 39(a) session about Commander, Naval Air Force Atlantic Instruction 5813.1H, an instruction also addressed recently in *Ward*, 74 M.J. at 225.  AT1 R.L.'s trial concluded 18 December 2013.  On 6 February 2014 the

Assuming the issue is not forfeited and the request was specific enough to trigger a heightened proof requirement,[38] for the reasons stated *supra*, we find that despite the discovery violation a fair and impartial panel tried the appellant, and any discovery error related to the instruction was harmless beyond a reasonable doubt.

### III.  Conclusion

The finding of guilty to Specification 1 of Charge I, sexual assault, is set aside.  That specification is dismissed with prejudice.  The remaining findings of guilty and sentence are affirmed.

Senior Judge FISCHER and Judge PALMER concur.

For the Court


R.H. TROIDL
Clerk of Court

---

TDC brought a motion to set aside AT1 R.L.'s guilty finding after learning of COMNAVAIRLANTINST 5813.1H on or about 7 January 2014.  In that case, as here, the defense requested items considered by the CA regarding member selection, and the prosecution did not provide the CA's member nomination instruction.

[38] Whether the discovery request was specific or general "depends upon whether the discovery request pointed with any particularity to the evidence desired." *United States v. Simmons*, 38 M.J. 376, 385 (C.M.A. 1993); *see also United States v. Agurs*, 427 U.S. 97, 106 (1976) and *United States v. Eshalomi*, 23 M.J. 12, 22 (C.M.A. 1986).