# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant CHRISTOPHER T. GROOMES
### United States Air Force

## ACM 38360

## 02 October 2014

Sentence adjudged 10 April 2013 by GCM convened at Barksdale Air Force Base, Louisiana. Military Judge: Natalie B. Richardson.

Approved Sentence: Bad-conduct discharge, confinement for 6 months, and reduction to E-4.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Major Roberto Ramírez and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

TELLER, Judge:

Consistent with his pleas, the appellant was convicted at a general court-martial of conspiracy to malinger; aggravated assault with a weapon likely to produce death or grievous bodily harm; child endangerment by culpable negligence; and obstructing justice, in violation of Articles 81, 128, and 134, UCMJ, 10 U.S.C. §§ 881, 928, 934. A panel of officer members sentenced him to a bad-conduct discharge, confinement for 6 months, and reduction to E-4. The convening authority approved the sentence as adjudged.

The appellant contends his pleas of guilty to child endangerment and obstructing justice are improvident. Additionally, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant alleges (1) he received ineffective assistance of counsel when trial defense counsel failed to inform him that he was pleading guilty to a charge (or charges) that would result in a conviction for a crime of domestic violence; (2) the military judge abused her discretion in accepting the appellant's guilty plea without inquiring whether the appellant understood he was pleading guilty to a charge that would be reported as a crime of domestic violence; and (3) his sentence to a bad-conduct discharge was overly harsh in light of his co-conspirator's sentence.

*Background*

On 13 September 2013, the appellant and his wife, then-Staff Sergeant (SSgt) JG, devised a plan to shoot the appellant in the leg to avoid the appellant's impending physical fitness assessment and blame the incident on an intruder. The appellant feared the assessment would result in his second failure and administrative sanctions. At the time, the appellant lived in an off-base home in Bossier City, Louisiana, with his wife, four-year-old daughter, and eight-month-old son. Although the appellant and SSgt JG followed the plan up to the point where she pointed a weapon at him, in the end, the appellant could not go through with it.

SSgt JG, facing a deployment she wanted to avoid, then suggested the appellant shoot her in the leg so she would not have to deploy. The appellant agreed, and they carried out their plan. The shooting took place in the living room of the home, approximately three feet from the wall separating the appellant from the bedroom where his children were sleeping.

As part of their revised plan, the couple agreed to tell police that someone had broken into their home and shot SSgt JG. After shooting his wife, the appellant called 911 and reported that an unknown male had entered their home and shot her. He then called his first sergeant and told him the same story and asked the first sergeant to come to his residence. When civilian police officers and detectives responded to the 911 call, the couple again relayed the false story about an intruder.

After rights advisement at the civilian police station, the appellant initially told a civilian detective the same false story about an intruder. When investigators asked to swab his hands for gunpowder, the appellant asserted his right to counsel and refused to answer further questions. Meanwhile, when confronted with the inconsistent physical evidence while at the hospital, SSgt JG admitted she and the appellant had fabricated the intruder story.

After SSgt JG called her husband and told him to "tell them everything," the appellant waived his rights and told a second civilian detective the truth about the incident. Military investigators from the Security Forces Squadron then arrived and

interviewed the appellant under rights advisement. The appellant again confessed about the plan he and his wife entered into and his role in injuring her.

*Providency of the Plea to Article 134, UCMJ, Specifications*

The appellant contends his guilty plea to two specifications of child endangerment and one specification of obstructing justice charged under Article 134, UCMJ, are improvident because an insufficient factual basis exists to sustain the convictions. Specifically, he argues there were no facts developed or evidence presented to show that his conduct caused a reasonably direct and palpable injury to good order and discipline in the armed forces.

During a guilty plea inquiry, the military judge is responsible for determining whether there is an adequate basis in law and fact to support the plea before accepting it. *United States v. Inabinette*, 66 M.J. 320, 321–22 (C.A.A.F. 2008). In order to ensure a provident plea, the military judge must "accurately inform [the accused] of the nature of his offense and elicit from him a factual basis to support his plea." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004); *United States v. Whitaker*, 72 M.J. 292, 293 (C.A.A.F. 2013) (the military judge may consider the facts contained in the stipulation of fact along with the appellant's inquiry on the record). Before accepting a guilty plea, the military judge must conduct an inquiry to determine whether there is factual basis for the plea, the accused understands the plea and is entering it voluntarily, and the accused admits each element of the offense. *United States v. Mitchell*, 66 M.J. 176, 177–78 (C.A.A.F. 2008).

We review a military judge's acceptance of a guilty plea for an abuse of discretion, and questions of law arising from the plea are reviewed de novo. *Inabinette*, 66 M.J. at 322. We afford significant deference to the military judge's determination that a factual basis exists to support the plea. *Id.* (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)); *see also United States v. Barton*, 60 M.J. 62 (C.A.A.F. 2004). If, during the plea or at any time during the court-martial, the accused presents a matter inconsistent with the plea, the military judge has an obligation to settle the inconsistency, or if that is untenable, to reject the plea. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (quoting *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011)). "This court must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (internal quotation marks omitted) (quoting *United States v. Watson*, 71 M.J. 54, 58 (C.A.A.F. 2012)). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 18 C.M.A. 535, 538–39 (1969)).

The appellant was charged with two specifications of child endangerment by culpable negligence for discharging a loaded firearm within a residence in which his children were present; the specifications were identical except for the identity of the child. He was also charged with obstructing justice by falsely telling a civilian detective that an intruder had shot his wife. All three specifications allege a violation under clause 1 of Article 134, UCMJ.

As such, prior to acceptance of a guilty plea, the military judge must elicit sufficient facts, through inquiry or the stipulation of fact, to establish the appellant's conduct under the circumstances caused a reasonably direct and obvious injury to good order and discipline. *Cf. United States v. Cendejas*, 62 M.J. 334, 340 (C.A.A.F. 2006). The act in question must be "directly prejudicial to good order and discipline" and not "prejudicial only in a remote or indirect sense." *Manual for Courts-Martial, United States*, Part IV, ¶ 60.c.(2)(a) (2012 ed.). "Determining whether those factual circumstances establish conduct that is or is not prejudicial to good order and discipline is a legal conclusion that remains within the discretion of the military judge in guilty plea cases." *United States v. Nance*, 67 M.J. 362, 366 (C.A.A.F. 2009).

## 1. Child endangerment specifications

In the guilty plea inquiry for the child endangerment specifications, the appellant acknowledged that his conduct created the risk his children could be seriously injured. He also told the military judge his conduct was prejudicial to good order and discipline because it caused his active duty wife to be absent from her military duty while meeting with child protective services personnel who were investigating the child endangerment issue. We do not find a substantial basis in law or fact for questioning the providence of the appellant's plea.

The military judge correctly explained the elements and definitions of the offenses, including the applicable terminal element. After acknowledging his understanding of the elements and definitions, the appellant admitted a reasonably direct and obvious injury to good order and discipline occurred when his wife did not perform her military duties because she was involved at certain times in the child protective services investigation that began due to his misconduct.[1] After considering the entire inquiry, we find no substantial basis to question his guilty plea to the child endangerment specifications. *See United States v. Erickson*, 61 M.J. 230, 232–33 (C.A.A.F. 2005) (conduct that affects a military member's capability to perform military duties has a direct and palpable effect on good order and discipline).

---

[1] The stipulation of fact, which was not discussed or referenced during the guilty plea inquiry, simply stated that the appellant's "conduct was prejudicial to good order and discipline in the armed forces."

## 2.  Obstruction of justice specification

The appellant was also charged with "wrongfully endeavor[ing] to impede an investigation by making a false statement to Bossier City . . . Detective Kevin Jones, to wit, 'my wife was shot by an intruder,' or words to that effect, which conduct was prejudicial to good order and discipline in the armed forces."  When the military judge asked the appellant why he thought he was guilty of the offense, the appellant stated:

> On 14 September 2012, . . . I made a statement to Detective Kevin Jones which was false and I knew that the statement was false.  I knew that when I called 911 to falsify the report of an intruder had [sic] shot my wife.  I figured there would be an investigation into the shooting.  The reason I did this, was to disrupt the investigation.
>
> . . . .
>
> It is prejudicial to good order and discipline in the armed forces because of the extra investigation that took place in order to find out the truth.[2]

When the military judge followed up on the "extra investigation" issue, the appellant noted two Air Force security forces investigators "came over to do an investigation also" after the civilian authorities began investigating the intruder story.  After the military judge expressed doubts about how that created a direct and obvious injury to good order and discipline, the appellant consulted with trial defense counsel.  He then told the judge:

> [T]he lie I told was a perpetuating plan for my wife to avoid deployment.  I believe if I would have told [civilian] Detective Jones the truth, the military would have been less involved in investigating the alleged malingering.
>
> . . . .
>
> [If] I would have, you know, had already told the truth to Detective Jones, and the military would have, I believe, would have been involved in less.

---

[2]  The stipulation of fact, which was not discussed or referenced during the guilty plea inquiry, simply stated "making false statements to an investigator to perpetuate a crime was to the prejudice of good order and discipline in the armed forces."

The military judge again followed up, asking if the appellant believed the civilian authorities may not have bothered contacting the military if they had quickly learned the appellant had shot his wife, even if they also learned he did it so she could avoid her military deployment. The appellant indicated he did. The military judge then found his plea to be provident. The appellant now contends his guilty plea is improvident because there were no facts developed or evidence presented to show that his lie to civilian detectives caused a reasonably direct and palpable injury to good order and discipline in the armed forces.

The military judge found a factual basis for the conclusion that the false statement to Detective [Det.] Jones was directly prejudicial to good order and discipline, as indicated by her acceptance of the guilty plea. The military judge elicited two potential bases for that conclusion. First, the appellant admitted that he made the false statement with the intent of disrupting the investigation, believing that the military would be involved. Second, the appellant asserted that the false statement created extra work for military investigators. The military judge, with good reason, expressed grave doubts about this second theory of liability. However, she never discussed the first basis for liability with the accused, so the record is unclear as to which basis she relied upon in accepting the plea.

In order to establish a factual basis for the appellant's guilty plea, the inquiry and stipulation of fact must contain circumstances elicited from the appellant that objectively support a finding of guilt as to each element of the offense. *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980). If those underlying facts exist in the record, "[f]ailure to explain each and every element of the charged offense to the accused in a clear and precise manner . . . is not reversible error." *United States v. Fisher*, 58 M.J. 300, 304 (C.A.A.F. 2003) (military judge's incorrect reference to falsity by omission in a false swearing inquiry did not invalidate a guilty plea when the record demonstrated other elements of the statement were knowingly false).

If one of the two potential bases contained in the record objectively support the plea, then the military judge did not abuse her discretion in accepting the plea, even if she did not explain why she accepted the plea on the record. We find that the assertion that the appellant's false statement created more work for military investigators was so implausible that it cannot form a legitimate basis for accepting the plea. If, however, lying to a civilian investigator with the intent of disrupting the investigation constitutes a direct injury to good order and discipline, then the plea is still provident.

Several courts have addressed whether lying to investigators about one's own misconduct constitutes an offense under Article 134, UCMJ. In *United States v. Arriaga*, 49 M.J. 9, 12 (C.A.A.F. 1998), the Court of Appeals for the Armed Forces upheld a soldier's guilty plea to obstruction of justice for lying to Army Criminal Investigation Division investigators about the location where he had disposed of stolen property. The court held that the scope of obstruction of justice under Article 134, UCMJ, was broader

than the scope of the federal obstruction of justice statute. Although the court did not expressly rule on which clause of Article 134, UCMJ, was violated,[3] the facts in the case centered around Arriaga's impact on the military investigation into his misconduct. In deciding *Arriaga*, the court cited to its opinion in *United States v. Jones*, 20 M.J. 38, 40 (C.M.A. 1985), where that court held that willful destruction of evidence in a military investigation was prejudicial to good order and discipline because it "harms the orderly administration of justice."

While courts have also upheld obstruction of justice charges for interference with a foreign investigation, they have typically relied on the service discrediting aspect of the conduct. *See United States v. Ashby*, 68 M.J. 108, 118–19 (C.A.A.F. 2009) (discussing obstruction of justice in the context of Article 133, UCMJ, 10 U.S.C. § 933); *United States v. Bailey*, 28 M.J. 1004, 1006–07 (A.C.M.R. 1989).

The Army Court of Criminal Appeals addressed a fact pattern similar to the instant case in *United States v. Jenkins*, 48 M.J. 594 (Army Ct. Crim. App. 1998). Private First Class Jenkins had engaged in sustained abuse of his wife, including sexual assault. After one such assault, Jenkins' wife reported the abuse to his company commander, but the subsequent investigation was handled by Colorado Springs police. *See Id.* at 596. In a verbal statement to a Colorado Springs investigator, Jenkins denied assaulting his wife and said the sex was consensual. The court found that "[e]ven though appellant was being interrogated by a civilian police officer, the allegations were first reported to military authorities and [the] appellant must have known that at least a possible disposition of the allegations would occur within the administration of military justice." *Id.* at 601. *See also United States v. Smith*, 34 M.J. 319, 324 (C.M.A. 1992) (the impact of charged misconduct "on a later, but nonetheless probable, military investigation" brings it within the intended scope of Article 134, UCMJ, where military authorities were already aware of the underlying situation at the time of the alleged obstruction activity), *rev'd on other grounds*, 39 M.J. 448 (CMA 1994).

In light of this, the question before us in this case is whether the military judge elicited sufficient facts during her inquiry, combined with the stipulation of fact, to find that the appellant's false statement to Det. Jones harmed the orderly administration of military justice in the same manner as if it had been made to a military investigator. We find that she did.

As in *Jenkins*, the military was aware of the incident before the false statement was made to the civilian investigator because the appellant told his first sergeant that an intruder had shot his wife before the questioning by detectives even began. While Bossier City police took the lead in the questioning, the appellant expected there to be some military involvement, and military investigators did, in fact, join the investigation.

---

[3] *United States v. Arriaga*, 49 M.J. 9, 12 (C.A.A.F. 1998), was decided before *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011), and the specification at issue did not allege a terminal element. *See Arriaga*, 49 M.J. at 10.

His false statement to Det. Jones was intended to allow him to escape accountability from either civilian or military authorities. Therefore, under these circumstances, at the moment he lied, the appellant caused a reasonably direct and palpable injury to good order and discipline in the armed forces. In this case, the duration of the injury was curtailed by the physical evidence and probable existence of gunpowder residue on the appellant's hands. But even a short-lived diversion of accountability for misconduct constitutes prejudice to good order and discipline. Accordingly, we find no substantial basis to question his guilty plea to the obstruction of justice specification.

The dissent cites *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F 2008), but we find that case distinguishable. In *Medina*, the court held that as a matter of fair notice, an accused had a right to know which clause of Article 134, UCMJ, formed the basis for the charge. *Id*. at 26–27. The court explicitly noted "[i]t bears emphasis that this is a question about the knowing and voluntary nature of the plea and not the adequacy of the factual basis supporting the plea." *Id*. at 27. The appellant in this case had no doubt that the charge alleged a violation of only clause 1 of Article 134, UCMJ, and the military judge adequately explained that basis in the inquiry. We find no basis on this record to doubt the knowing and voluntary nature of the appellant's plea.

*Domestic Violence Conviction*

In a declaration submitted on appeal, the appellant says he was served with paperwork shortly after his trial that indicated at least one of his convictions was a "Crime of Domestic Violence and would be reported as such." He contends this was the first time he became aware of this fact, that his attorneys never advised him that pleading guilty would result in a reportable conviction, and that he would not have pled guilty if he had known this requirement. The appellant also states this reported domestic violence conviction "has caused [him] hardship, to include not being able to find jobs [and] not being able to pick [his] daughter up from school." Pursuant to *Grostefon*, he now contends the military judge erred in failing to inquire into his understanding on this matter and that his defense counsel were ineffective for not advising him of this consequence before he pled guilty.

Although the appellant does not personally complain about the impact of his conviction on his ability to possess firearms, his appellate brief focuses almost exclusively on this consequence of his conviction. In making this argument, the brief references the Lautenberg Amendment, 10 U.S.C. § 922(g)(9), which makes it unlawful for a person convicted "in any court of a misdemeanor crime of domestic violence" to possess or receive any firearm or ammunition that has been shipped or transported in interstate or foreign commerce.[4]

---

[4] Congress enacted this provision in order to ensure that perpetrators of domestic violence who are only convicted of misdemeanors are subject to the same gun control restrictions in place for convicted felons. *United States v. Castleman*, 134 S. Ct. 1405, 1409 (2014). Under Department of Defense (DoD) policy, a qualifying conviction for

The appellant invites us to find a military judge's failure to inquire into an accused's knowledge of the ramifications of a "domestic violence" conviction to be comparable to a failure to inquire into his knowledge of sex offender registration requirements. *Cf. United States v. Riley*, 72 M.J. 115, 122 (2013) (failure to inquire into the accused's knowledge of sex offender registration requirements results in a substantial basis to question the providence of a guilty plea). We decline to do so.

It is important to note that, under the facts of this case, the appellant's conviction for a "domestic violence" offense created no consequences for him beyond those he already faced. Federal law has long prohibited firearm possession by someone convicted "in any court of a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Because the appellant was convicted of multiple crimes punishable by over one year of confinement, his "domestic violence" conviction had no effect on his ability to possess a firearm. Furthermore, there is no evidence this "domestic violence" conviction is negatively affecting his ability to find a job or pick his daughter up from school, as opposed to his other convictions.

Extending *Riley* to cover the scenario in this case would extend those requirements to every court-martial in which the accused is pleading guilty to an offense with a potential term of confinement over one year. Although the restriction on gun ownership by such individuals has been in place for years, no military appellate court has ever required an accused to be advised of those restrictions during his guilty plea inquiry. We decline to undertake such a dramatic step in a case where the appellant has not personally indicated any concern about his ability to possess a firearm.

For similar reasons, we do not find his trial defense counsel were ineffective even if they failed to advise him of these ramifications that would follow from his guilty plea to a crime of domestic violence. When an appellant asserts that his counsel provided ineffective assistance "[i]n the context of a guilty plea, the prejudice question is whether 'there is a reasonable probability that, but for counsel's errors, [the appellant] would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Rose*, 71 M.J. 138, 144 (C.A.A.F. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). We find no such reasonable probability here.

Based on the charges in the case, the appellant faced a maximum punishment of 20 years of confinement and a dishonorable discharge. Prior to trial, the appellant submitted an offer for a pretrial agreement in which he would plead guilty if the convening authority would limit confinement to no more than 24 months if a punitive discharge was adjudged, and 30 months if no punitive discharge was adjudged. The convening authority declined the offer. The appellant then successfully modified the

this provision includes a conviction at a general or special court-martial of "an offense that has as its factual basis, the use . . . of physical force . . . committed by a current or former spouse." DoD Instruction 6400.06, *Domestic Abuse Involving DoD Military and Certain Affiliated Peronnel*, E2.8, ¶ 6.1.4.3 (21 August 2007, incorporating Change 1, 20 September 2011).

offer, and the convening authority agreed to disapprove any confinement in excess of three years.  In light of the appellant's willingness to concede up to an additional year of confinement in order to gain some certainty prior to trial, we find unpersuasive his contention now on appeal that he would have plead not guilty and litigated the case simply to avoid the comparatively less onerous consequences of a conviction for a crime of domestic violence.

*Sentence Appropriateness*

The appellant's final contention is that his punishment was overly harsh, particularly in light of his co-conspirator's sentence.  This court "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."  Article 66(c), UCMJ, 10 U.S.C. § 866(c).  We review sentence appropriateness de novo, employing "a sweeping congressional mandate" to ensure "a fair and just punishment for every accused."  *United States v. Baier*, 60 M.J. 382, 384–85 (C.A.A.F. 2005) (citations omitted).

The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases.  *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985).  We are not required to engage in comparison of specific cases "except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases."  *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283).  The "appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.'"  *Id*. If the appellant satisfies his burden, the Government must then establish a rational basis for the disparity.  *Id*.

We find that the appellant's case and that of SSgt JG are closely related. *See United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994) (closely related cases "involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design"); see also *Lacy*, 50 M.J. at 288 (examples of closely related cases include co-actors in a common crime, service members involved in a common or parallel scheme, or "some other direct nexus between the service members whose sentences are sought to be compared").  The appellant's conduct arose from a common scheme with SSgt JG:  they shared a common goal of getting SSgt JG excused from her upcoming deployment; they jointly planned the stories they would tell law enforcement after the shooting; and SSgt JG even encouraged the appellant to go through with the plan after he could not initially pull the trigger.

We do not find, however, that the sentences are highly disparate.  While both the appellant and SSgt JG received approximately 6 months of confinement, other aspects of the sentence were distinct.  SSgt JG received—in addition to 179 days confinement—

3 months of hard labor without confinement, forfeiture of $994.00 pay per month for 6 months, reduction to E-1, and a reprimand. The appellant received—in addition to 6 months confinement—a bad-conduct discharge and a reduction of one grade to E-4. Accordingly, this case requires us to compare the bad-conduct discharge the appellant received to 6 months of two-thirds forfeiture of pay, 3 months of hard labor without confinement, and a reduction of an additional three grades which his co-conspirator received. While the bad-conduct discharge may have longer-lasting consequences, the distinct aspects of SSgt JG's punishment would be considered severe in their own right. As our superior court noted, "[t]he test in such a case is not limited to a narrow comparison of the numerical values of the sentences at issue." *Lacy*, 50 M.J. at 289. While the punishments are different, the differences are not of such a magnitude as to render the appellant's sentence unfair or unjust.

Even if we found that the sentences were highly disparate, we would still find that a rational basis for the disparity exists. Although they participated in a common scheme, the appellant is the one who actually pulled the trigger and shot his co-conspirator. This distinction alone provides a sufficient basis for the difference between the two sentences. Furthermore, SSgt JG was only convicted of malingering, whereas the appellant was convicted of aggravated assault, child endangerment, obstructing justice, and conspiracy to commit malingering.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

ALLRED, Chief Judge, concurs.

HECKER, Senior Judge, concurring in part and dissenting in part:

I concur with the majority opinion other than its conclusion that the appellant's plea to obstruction of justice was provident, and I respectfully dissent from that portion of the opinion. Although I agree that false statements to civilian investigators could, under certain circumstances, result in a reasonably direct and palpable injury to good order and discipline in the armed forces by harming the orderly administration of military justice, I find the factual and legal predicate for such a conclusion to be lacking in this case.

To the extent the appellant's lie to a civilian detective harmed the orderly administration of military justice, I find the plea cannot be sustained on the factual admissions made by the appellant as the military judge did not explain that theory or how it related to the facts relayed by the appellant, who only referenced how his lie impeded the civilian detective's investigation into the intruder story and into him for discharging the weapon. An accused has a right to know under what legal theory he is pleading guilty, and "this fair notice resides at the heart of the plea inquiry." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F 2008). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *Id.* (citing *Care*, 40 C.M.R. at 250–51).

Instead, the military judge focused on whether the military would have become involved and, once involved, how extensive its involvement would be. When asked how his lie to the civilian detective caused an injury to good order and discipline, the appellant first referenced the "extra investigation [by military investigators] that took place in order to find out the truth." This cannot serve as the basis for the guilty plea, however, because he had already told the truth by the time military investigators arrived to conduct their interview, and there is no indication in the record that any "extra investigation" occurred. The military judge's reaction to this explanation indicated that she too found this statement insufficient to support this element of the guilty plea, as does the majority here.

The appellant then stated his belief the military investigators would have been "less involved" if he had not lied to the detective and that the civilians would not have contacted the military if he had outright admitted to shooting his wife to help her avoid a deployment. After hearing this, the military judge then found the plea provident. I disagree.

The first basis cited by the appellant is simply a restatement of his inadequate "extra investigation" point. As to his second point, as revealed during the guilty plea inquiry, the military was already involved in the situation before he lied to the detective, based on a phone call made by the appellant to his first sergeant. Thus, once this call was made, it would not matter whether the appellant told the civilian detective the truth or a lie—the military was already involved. This apparent inconsistency between the appellant's statement and other facts in the record was not resolved, and therefore, I find that the appellant's plea improvident and that the military judge erred in accepting it.

Despite this conclusion, I would not provide the appellant with any sentence relief nor order a sentence rehearing. At his court-martial, the appellant was sentenced using a maximum period of confinement of 20 years, 5 years of which come from the obstruction of justice specification. I do not find this to be a "dramatic change in the penalty landscape. *See United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003) (a "dramatic change in the 'penalty landscape'" lessens an appellate court's ability to reassess a

sentence). Additionally, the evidence of the appellant's lie to civilian detectives would have been before the sentencing authority even in the absence of an obstruction charge. *See* Rule for Courts-Marital 1001(b)(4). It was part of the facts and circumstances surrounding the appellant's conspiracy with, and aggravated assault of, his wife and was an aggravating circumstance directly relating to those charges. *See id.*

Given this, I am confident that, absent this error, the panel would have adjudged a sentence no less severe than that approved by the convening authority and therefore would reassess the sentence to the one adjudged by the panel—a bad-conduct discharge, confinement for 6 months, and reduction to E-4. *See United States v. Doss*, 57 M.J. 182, 185–86 (C.A.A.F. 2002) (citing *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986)); *United States v. Reed*, 33 M.J. 98, 99 (C.M.A. 1991).

FOR THE COURT

STEVEN LUCAS
Clerk of the Court