# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Technical Sergeant JAIME R. RODRIGUEZ**
**United States Air Force**

**ACM 38519 (f rev)**

**13 July 2016**

Sentence adjudged 14 June 2013 by GCM convened at Joint Base San Antonio-Lackland, Texas. Military Judge: Donald R. Eller Jr.

Approved Sentence: Dishonorable discharge, confinement for 27 years, and reduction to E-1.

Appellate Counsel for Appellant: Michael C. Gross, Esquire (argued) and Major Christopher D. James.

Appellate Counsel for the United States: Major Jeremy D. Gehman (argued); Colonel Katherine E. Oler; Major Daniel J. Breen; Major Richard J. Schrider; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and MAYBERRY
Appellate Military Judges

OPINION OF THE COURT
UPON FURTHER REVIEW

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MITCHELL, Senior Judge:

Appellant pled guilty at a general court-martial to the following offenses:

(1) Fourteen specifications of violating a lawful general regulation by wrongfully attempting to develop and maintain personal and intimate relationships with various Air Force applicants, recruits, and recruiter's assistants;

(2) One specification of violating a lawful general regulation by wrongfully attempting to develop and maintain a personal and intimate relationship with an Air Force applicant, and by using his grade or position, threats, pressure, or promise of return of favors or favorable treatment in an attempt to gain sexual favors from the applicant;

(3) One specification of violating a lawful order by wrongfully sending an Air Force applicant an e-mail from his personal e-mail account;

(4) One specification of making a false official statement;

(5) One specification of sodomy;

(6) Two specifications of obstructing justice by wrongfully endeavoring to impede an investigation; and

(7) Two specifications of adultery.

Appellant pled not guilty to several remaining charges and specifications. A panel of officer members convicted him, contrary to his pleas, of the following offenses:

(1) One specification of aggravated sexual assault by causing bodily harm;[1]

(2) One specification of abusive sexual contact by causing bodily harm;[2]

(3) One specification of sodomy;[3]

(4) One specification of aggravated sexual contact by using strength;

(5) One specification of wrongful sexual contact; and

(6) One specification of indecent exposure.

The members acquitted Appellant of one remaining charge and specification alleging assault consummated by a battery. The members sentenced Appellant to a dishonorable discharge, confinement for 27 years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority disapproved the adjudged forfeitures, but otherwise approved the sentence as adjudged.

Appellant initially raised 15 assignments of error covering several rulings by the military judge, the sufficiency of the evidence concerning his conviction of certain offenses, the providence of his guilty plea to violating a lawful general regulation, the

---

[1] The members acquitted Appellant of the charged greater offense of rape by using strength and power.
[2] The members acquitted Appellant of the charged greater offense of aggravated sexual contact by using strength, power, and restraint.
[3] The members acquitted Appellant of the charged greater offense of forcible sodomy.

performance of his trial defense counsel, the post-trial processing of his case, the actions of one member of the court-martial, and errors in the staff judge advocate's recommendation (SJAR).

In an earlier opinion, we addressed only the issues concerning the errors in the SJAR, and ordered new post-trial processing. The record was remanded to the convening authority and new post-trial processing occurred. The convening authority did not approve the adjudged forfeitures, but otherwise approved the adjudged sentence.

Appellant raises two new assignments of error alleging that the convening authority did not review Appellant's submissions before taking action and that excessive delay in post-trial processing warrants relief.

We granted a motion for oral argument on three of the assignments of error: (1) whether the military judge should have dismissed Charge III and its Specifications, Specification 1 of Charge IV, and the Second Additional Charge and its Specifications for unlawful command influence; (2) whether the military judge erred when he did not sever the charges of consensual activity from the charges of nonconsensual activity; and (3) whether the evidence is legally and factually insufficient to sustain the convictions for aggravated sexual assault by causing bodily harm to Ms. BS and abusive sexual contact by causing bodily harm to Ms. BS in violation of Article 120, UCMJ.

We have examined all of Appellant's alleged assignments of error. We grant relief on the issues of unreasonable multiplication of charges and legal and factual sufficiency, and authorize a sentence rehearing. Our reasoning on several of the assignments of error is further detailed below. Some of the assignments of error were mooted when we ordered new post-trial processing. We defer ruling on the issue of the timeliness of the post-trial processing until the case is returned for our review. We summarily reject the other remaining issues which require no additional analysis or relief. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

*Background*

Appellant was an Air Force recruiter who was convicted of various types of improper conduct toward Air Force applicants, recruits, and recruiter's assistants. When he came under investigation, he lied about his activities and took actions to impede the investigation. Further facts are discussed as necessary for each assignment of error.

*Unlawful Command Influence*

Appellant contends the military judge erred when he denied the motion to dismiss for unlawful command influence. He argues that the cumulative effect of comments made by the President of the United States and the Secretary of Defense, along with the Air Force's zero tolerance policy on sexual assault rendered a fair trial impossible. Appellant's

position is that the military judge correctly determined that there was some evidence of unlawful command influence but erred when he found that the Prosecution rebutted that evidence beyond a reasonable doubt.

Article 37(a), UCMJ, 10 U.S.C. § 837(a) states in relevant part, "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case." The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991). "Even if there was no actual unlawful command influence, there may be a question whether the influence of command placed an 'intolerable strain on public perception of the military justice system.'" *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006) (quoting *United States v. Stoneman*, 57 M.J. 35, 42-43 (C.A.A.F. 2002)). "Whether the conduct of the [senior leaders] in this case created an appearance of unlawful command influence is determined objectively." *Id.* Because the focus is on the perception of fairness as viewed through the eyes of a reasonable member of the public, "[T]he appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Id.*

The burden of raising the issue of unlawful command influence rests with the Defense. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). The Defense must (1) "show facts which, if true, constitute unlawful command influence," and (2) show "the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *Id.* To meet the threshold for raising this issue, the Defense is required to present "some evidence" of unlawful command influence. *Id.* If the Defense meets that burden to raise the issue, the burden shifts to the Government, who must prove beyond a reasonable doubt: (1) the predicate facts do not exist; or (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings and sentence. *Id.* at 151.

After preferral and referral, but prior to Appellant's court-martial, the President and Secretary of Defense expressed their concern about sexual assault, and arguably advocated for specific results in prosecutions for sexual assault offenses. The military judge allowed a written questionnaire to be distributed to the members. The members indicated they were generally aware of the statements about sexual assault in the military and that the military had a "zero tolerance" policy. The military judge and both counsel conducted extensive voir dire of the potential members. Only four of the originally detailed members remained after challenges. Because this was below the required quorum, the convening authority detailed additional members. Counsel again engaged in extensive voir dire. These members were also generally aware of statements concerning sexual assault in the military. After challenges, four additional members were seated, for a total of eight members.

The military judge determined that the statements of the President and the Secretary of Defense, when combined with the members' knowledge of these statements, was sufficient to meet the low threshold required of the Defense. However, the military judge determined that the Prosecution met its burden of proving beyond a reasonable doubt that any unlawful command influence would not and did not affect the findings, sentence, or clemency. The statements occurred after the preferral and referral so there is no evidence that those decisions were somehow influenced by the statements. The general court-martial convening authority submitted an affidavit in which he swore he would not be influenced in the exercise of his independent judgment. The military judge found this convincing, as do we. The military judge made the following finding about the court-martial members: "Having heard their responses to voir dire posed by the Court and both parties and following challenges and excusals, this Court is confident beyond a reasonable doubt that the proceedings will not be impacted by the statements of these civilian leaders." We concur. Under these circumstances, we find no basis to conclude that Appellant was subject to any actual prejudice due to the attention on military sexual assault cases generally or his case in particular. *See United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003). Nor do we find that the environment created apparent unlawful command influence. An objective, disinterested, reasonable member of the public, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of Appellant's court-martial proceeding. *See Lewis*, 63 M.J. at 415. We are also persuaded by our prior determinations on similar unlawful command influence motions. *See United States v. Jones*, ACM 38434, (A.F. Ct. Crim. App. 13 March 2015) (unpub. op.); *United States v. Andersen,* ACM 38466 (A.F. Ct. Crim. App. 2 February 2015) (unpub. op.); *United States v. Stubbs*, ACM 38475 (A.F. Ct. Crim. App. 24 November 2014) (unpub. op.). Regardless of whether the statements were sufficient to meet the low threshold, the Prosecution met its burden of proving beyond a reasonable doubt that any possible unlawful command influence would not affect the proceedings.

*Multiplicity and Unreasonable Multiplication of Charges*

We review claims of multiplicity de novo. *United States v. Paxton*, 64 M.J. 484, 490 (C.A.A.F. 2007). We review claims of unreasonable multiplication of charges for an abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012). In the context of multiplicity and unreasonable multiplication of charges, "three concepts may arise: multiplicity for double jeopardy purposes[,] unreasonable multiplication of charges as applied to findings[, and] unreasonable multiplication of charges as applied to sentence. *Id*.

Multiplicity in violation of the Double Jeopardy Clause[4] occurs when "a court, contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct." *United States v. Anderson*,

---

[4] U.S. CONST. amend. V.

68 M.J. 378, 385 (C.A.A.F. 2010) (quoting *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)) (emphasis omitted). Accordingly, an accused may not be convicted and punished for two offenses where one is necessarily included in the other, absent congressional intent to permit separate punishments. *See United States v. Morita*, 73 M.J. 548, 564 (A.F. Ct. Crim. App. 2014), *rev'd on other grounds*, 74 M.J. 116 (C.A.A.F. 2015); *United States v. Teters*, 37 M.J. 370, 376 (C.M.A. 1993). The Supreme Court laid out a separate elements test for analyzing multiplicity issues: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "Accordingly, multiple convictions and punishments are permitted . . . if the two charges each have at least one separate statutory element from each other." *Morita*, 73 M.J. at 564. Where one offense is necessarily included in the other under the separate elements test, legislative intent to permit separate punishments may be expressed in the statute or its legislative history, or "it can also be presumed or inferred based on the elements of the violated statutes and their relationship to each other." *Teters*, 37 M.J. at 376–77.

Even if charged offenses are not multiplicious, courts may apply the doctrine of unreasonable multiplication of charges to dismiss certain charges and specifications. Rule for Courts-Martial 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The principle provides that the Government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994). Our superior court has endorsed the following non-exhaustive list of factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?; (2) Is each charge and specification aimed at distinctly separate criminal acts?; (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?; (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F. 2001) (quoting *Teters*, 53 M.J. at 607) (quotation marks omitted). "[U]nlike multiplicity—where an offense found multiplicious for findings is necessarily multiplicious for sentencing—the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing." *Campbell*, 71 M.J. at 23. When the *Quiroz* factors indicate the unreasonable multiplication of charges principles affect sentencing more than findings, "the nature of the

harm requires a remedy that focuses more appropriately on punishment than on findings." *Quiroz*, 55 M.J. at 339.

We first address the challenge to the referred Specifications 14 and 15 of Charge I. Both specifications are aimed at violations of Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships* (2 March 2007), for Appellant's interactions with an applicant, Ms. JC. At trial, Appellant challenged these specifications on the issue of multiplicity and unreasonable multiplication of charges. The military judge denied the motion prior to the entry of findings, but left open that he would consider appropriate remedies before sentencing proceedings. Appellant then pled guilty to both of these specifications which forfeited the multiplicity motion unless the specifications are facially duplicative. *See United States v. Craig*, 68 M.J. 399 (C.A.A.F. 2009). The specifications are not, as they alleged violations of different paragraphs of the AETCI. Prior to the members being informed of the charges and specifications to which Appellant pled guilty, the military judge ruled on whether the specifications were unreasonably multiplied. The military judge merged both specifications into one specification (the now renumbered specification 14). We find no error in the military judge's ruling to consolidate the specifications. *See United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014) (requiring consolidation or dismissal of a specification when charged in the alternative). Appellant, thus, only faced sentencing and stands convicted of the consolidated specification 14, which incorporates the language from the prior specifications 14 and 15. No further relief is warranted.

Appellant also challenges his convictions of the three specifications under the Second Additional Charge for a violation of Article 120, UCMJ,[5] and argues that two of the specifications should be dismissed. All three specifications address Appellant's criminal acts with Ms. JD when he intentionally exposed his penis to her and caused her to touch his exposed penis. The three specifications are: (1) he engaged in aggravated sexual contact when he forced her hand to contact his exposed penis by using strength sufficient that she could not avoid or escape the sexual contact, (2) he engaged in wrongful sexual contact by forcing her hand to contact his exposed penis without her permission, and (3) he intentionally exposed his penis in an indecent manner.

At the court-martial, the trial counsel opposed any consolidation or dismissal of the offenses prior to the members' returning a verdict. Trial counsel argued that the offenses were not lesser included offenses of each other and should not be dismissed due to concerns about possible appellate action. When asked by the military judge if the offenses were charged in the alternative, trial counsel argued that informing the members that they could only convict Appellant of one of the offenses would foreclose the prosecution from preserving both offenses for possible appellate review. The military judge determined that

---

[5] Appellant's misconduct toward Ms. JD occurred between 1 December 2010 and 16 November 2011. Thus, the specifications all use the version of Article 120, UCMJ, 10 U.S.C. 920, applicable to offenses between 1 October 2007 and 27 June 2012. *Manual for Courts-Martial, United States*, app. 28 at A28-1 (2012 ed.).

wrongful sexual contact was not a lesser included offense of aggravated sexual contact. We agree. *United States v. Barlow*, ACM 37981, (A.F. Ct. Crim. App. 13 March 2014) (unpub op.) ("Based on our reading of the plain language of Congress that lack of consent or permission is not an element of any offense under Article 120, UCMJ, except wrongful sexual contact, we conclude today that wrongful sexual contact can never be [a lesser included offense] of any other offense under Article 120, UCMJ.") The Prosecution earlier argued that the appropriate remedy was to merge the specifications for sentencing maximum purposes. The military judge concurred that this was the appropriate remedy and merged the specifications of aggravated sexual contact and wrongful sexual contact.

We agree with the trial counsel that instructing the members that they could convict Appellant of no more than one of the three specifications was not required. While the trial counsel tried to disavow the phrase "alternative charging," we conclude this was the intent. Trial counsel admitted, "[W]e do not distinguish those as two separate acts as far as the aggravated—because there is only one sexual touching. He grabbed her hand and made her touch his penis." Therefore, we conclude that trial counsel admitted that the same act was charged as two separate offenses due to exigencies of proof. "Dismissal of specifications charged for exigencies of proof is particularly appropriate given the nuances and complexity of Article 120, UCMJ, which make charging in the alternative an unexceptional and often prudent decision." *Elespuru*, 73 M.J. at 329–30. Accordingly, we set aside and dismiss Specification 2 of Second Additional Charge I.

Likewise, we conclude that under the facts of this case, Appellant's indecent exposure of his penis is not a distinctly separate criminal act from his aggravated sexual contact by forcing his victim to touch his exposed penis. Our sister services have examined similar fact patterns and found the indecent exposure to be an unreasonable multiplication of charges. *See United States v. Solomon*, NMCCA 201100582 (N-M Ct. Crim. App. 21 August 2014) (abusive sexual contact and indecent exposure specifications constituted an unreasonable multiplication of charges), *United States v. Hernandez*, Army 20110471, (A. Ct. Crim. App. 22 May 2013) (assault with intent to commit sodomy and indecent exposure were an unreasonable multiplication of charges). Based on our review of the *Quiroz* factors, we conclude that the indecent exposure was an unreasonable multiplication of charges with the conviction of aggravated sexual contact by forcing the victim to touch his exposed penis. We set aside and dismiss Specification 3 of Second Additional Charge I.

*Instruction on Mistake of Fact as to Consent*

Trial defense counsel requested the military judge instruct the members on the defense of mistake of fact as to consent regarding Second Additional Charge I and its specifications regarding Ms. JD. The military judge denied the request. After considering all the evidence, he determined there was no evidence that raised the defense. We agree.

Military judges have substantial discretionary power to decide which instructions to give panel members. Whether a panel is properly instructed is a question of law reviewed de novo. *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008). A military judge must instruct panel members on any affirmative defense that is "in issue." R.C.M. 920(e)(3); *Stanley*, 71 M.J. at 63; *United States v. Schumacher*, 70 M.J. 387, 389 (C.A.A.F. 2011). "A matter is considered 'in issue' when 'some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose.'" *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007) (quoting R.C.M. 920(e), Discussion). Relying on authority from the Supreme Court, our superior court has stated that "'some evidence' entitling an accused to an instruction, has not been presented until 'there exists evidence sufficient for a reasonable jury to find in [the accused's] favor.'" *Schumacher*, 70 M.J. at 389 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). The *Schumacher* Court further explained: "[T]he military judge must answer the legal question of whether there is *some evidence* upon which members could reasonably rely to find that *each element of the defense has been established*. This test is similar to that for legal sufficiency." *Schumacher*, 70 M.J. at 389-90 (emphasis added).

*United States v. Gurney*, 73 M.J. 587, 598-99 (A.F. Ct. Crim. App. 2014) (alterations in original) (parallel citation omitted).

We agree with the military judge that the defense of mistake of fact as to consent was not in issue. At best there was some evidence that Appellant was trying to be seductive toward Ms. JD. Like the military judge, we do not see how this introduced any evidence that he mistakenly believed his efforts were successful. The military judge did not err in deciding not to give this instruction.

*Motion to Sever*

At trial, Appellant filed a motion to sever Charge III and its Specifications and Charge IV, Specification 1. These charges named A1C BS as the victim. The motion also requested the military judge sever the Second Additional Charge I and its Specifications and the Second Additional Charge II and its Specification. These charges named Ms. JD as the victim. Appellant sought to sever the specifications alleging nonconsensual sexual misconduct from the other offenses at this court-martial. Among other things, Appellant pled guilty to a charge alleging that he developed and maintained improper relationships

with various Air Force applicants, recruits, and recruiter's assistants, including A1C BS and Ms. JD. At Appellant's request, the members were informed that at a previous session Appellant had pled guilty to developing and maintaining improper relationships with A1C BS and Ms. JD. The members were not informed of any other charges and specifications to which Appellant had pled guilty until the sentencing portion of trial.

We review a military judge's decision regarding a motion to sever for an abuse of discretion. *United States v. Duncan*, 53 M.J. 494, 497–98 (C.A.A.F. 2000). Rule for Courts-Martial (R.C.M.) 601(e)(2) permits the convening authority to refer multiple offenses to a single court-martial regardless of whether the charges are related and regardless of whether the charges are minor, serious, or both. The military justice system encourages joinder of all known offenses at a single court-martial. *United States v. Simpson*, 56 M.J. 462, 464 (C.A.A.F. 2002); R.C.M. 602, Discussion ("Ordinarily all known charges should be referred to a single court-martial.").

Despite the preference for all allegations to be considered at one court-martial, a military judge is required to grant a motion to sever when necessary to avoid a "manifest injustice." *United States v. Giles*, 59 M.J. 374, 378 (C.A.A.F. 2004). When a military judge denies the severance motion "the appellant must demonstrate more than the fact that separate trials would have provided a better opportunity for an acquittal. The appellant must show that the ruling caused actual prejudice by preventing the appellant from receiving a fair trial." *Id*. (citation omitted). We examine three factors to determine if an appellant has met this standard.

(1) Would the evidence of one offense be admissible proof of the other?

(2) Did the military judge provide a limiting instruction regarding spillover?

(3) Do the findings reveal an impermissible crossover of evidence?

*Id.* (citing *United States v. Curtis*, 44 M.J. 106, 128 (C.A.A.F. 1996)).

Applying the first factor, we agree with the military judge that the evidence related to the charges to which Appellant pled guilty would not have been admissible in trials involving the offenses against A1C BS and Ms. JD. However, as the charges to which Appellant pled guilty were not before the members until sentencing, the only issue that warrants discussion is whether the evidence of the charged offenses against A1C BS and Ms. JD would have been admissible in separate trials as well as in trial with both sets of charges.

The military judge determined that the offenses against A1C BS and Ms. JD would have been admissible in separate trials under Mil. R. Evid. 413. The military judge conducted an analysis of the factors elucidated in *United States v. Wright*, 53 M.J. 476, 482

(C.A.A.F. 2000)[6] and the balancing test set out in Mil. R. Evid. 403. He concluded that "the evidence related to the sexual assault offense naming A1C [BS] and Ms. [JD] would be admissible in prosecutions of each case . . . ." We agree. Our superior court's recent decision highlights that granting the motion to sever would have resulted in the corresponding uncharged misconduct being admissible in each of the counter-part separate trials. *See United States v. Hills*, __ M.J. __ No. 97-1121/AF, slip. op. at 10 n.3 (Daily Journal 27 June 2016)) (implying that Mil. R. Evid. 413 evidence would be admissible in separate trials even though "the Government cannot use Mil. R. Evid. 413 if it elects to join sex offenses in a single trial").

Addressing the second factor, the military judge gave the members numerous limiting instructions regarding the spillover of evidence throughout the court-martial. Appellant cites *United States v. Haye*, 29 M.J. 213 (C.M.A. 1989), in which our superior court reversed a conviction not because the military judge's instructions were inadequate, but because "the evidence presented by the Government . . . was so merged into one that it [was] difficult to distinguish its intended purpose." *Id.* at 215. However, the case at bar is more akin to *United States v. Southworth*, 50 M.J. 74 (C.A.A.F. 1999), because in this case not only did the military judge give adequate spillover instructions but the Government also partitioned the presentation of the evidence. The adequacy of the spillover instruction is tempered by the Mil. R. Evid. 413 instruction and the resulting instructional error. *See Hills*, __ M.J. __ No. 97-1121/AF. However, our decision on the legal and factual sufficiency resolves this error.

Finally, turning to the third factor, the findings do not reflect impermissible crossover of evidence. Appellant focuses his argument on a concern that the number of complainants created an environment in which he could not receive a fair trial. We find this argument unpersuasive as the members were not informed of the majority of the charges and specifications to which Appellant pled guilty until after they had rendered a verdict to the charges relating to A1C BS and Ms. JD. Thus, the findings of guilt pertaining to the more minor offenses did not create any potential for the members to improperly conclude that Appellant was more likely to have committed the assaults of A1C BS and Ms. JD.

The Government presented independent factual cases with respect to each victim. We are confident that the court members distinguished between the strength of each allegation. Appellant was acquitted of the most serious charges and was instead convicted

---

[6] These factors are:

> the strength of the proof of the prior act; the probative weight of the evidence; the potential to present less prejudicial evidence; the possible distraction of the fact-finder; the time needed to prove the prior conduct; the temporal proximity of the prior event; the frequency of the acts; the presence of any intervening circumstances; and the relationship between the parties.

*United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000).

of the lesser included offenses for his actions with A1C BS; he was also found not guilty of assaulting Ms. JD. Consequently, this factor weighs against Appellant. Our determination of the unreasonable multiplication of charges due to the alternative charging by Ms. JD is not a factor in this determination.

We find that the military judge did not abuse his discretion when he denied the motion to sever.

*Legal and Factual Sufficiency of Charge III and Its Specifications and Charge IV, Specification 1*

Appellant first met A1C BS, a new recruit to the Air Force, when he acted as the recruiter in charge of her courtesy shipment prior to basic military training.[7] While in technical training school, A1C BS applied to participate in the recruiter's assistance program (RAP).[8] Appellant approved her request to participate in this program at Lake Jackson, Texas, a location approximately one hour from A1C BS's family.

Appellant began sending inappropriate text and instant messages to A1C BS while she was still in technical training school. Although A1C BS was initially shocked, she admitted she was flattered to receive this type of communication from Appellant, found it to be funny, and liked the attention. Over time, Appellant's messages to A1C BS became more sexually graphic, including describing sexual acts that he wanted to perform on A1C BS. A1C BS testified she played along with his sexual fantasies to include discussing sexual positions and having sex in the recruiting office. After completing technical training school, A1C BS returned to Lake Jackson to visit family and perform her RAP duties. Appellant and A1C BS continued to exchange inappropriate text messages while she was on leave and upon her assignment to the Air Force recruiting office in Lake Jackson. In these messages, Appellant described sexual activity he wanted to engage in with A1C BS in the Air Force recruiting office.

Appellant began making physical advances toward A1C BS after she started performing her recruiter's assistant duties in Lake Jackson. Within days of arriving at Lake Jackson, Appellant and A1C BS began kissing each other. A1C BS described it as "making out."

The charges and specifications Appellant challenges for legal and factual sufficiency stem from an incident in which Appellant and A1C BS returned to the recruiting office after physical training. Appellant began changing into his Air Force blues

---

[7] A courtesy shipment may occur when a recruit does not leave for basic training from the same location from which they were recruited. Although the original recruiter is responsible for the recruit's entry to the Air Force, a second recruiter at the new local area is assigned to assist the recruit in matters such as shipment of household goods.

[8] The recruiter's assistance program is an initiative to showcase Airmen who have recently completed basic military training to the community.

uniform, locked the office door, closed the blinds, ensured that the sign in the front of the recruiting office indicated that the office was closed, guided A1C BS to a back room, and began to kiss and "grope" her. A1C BS again described it as "making out." While groping A1C BS, Appellant began using his fingers to touch her vaginal area outside of her clothing. A1C BS was kissing him while this was occurring and did not recall if she tried to move his hand away. Appellant then tried to put his fingers inside of A1C BS. A1C BS testified that she did not want this sexual activity to happen and that she pushed away Appellant's hands. A1C BS testified she eventually allowed him to penetrate her vagina with his fingers. While Appellant was digitally penetrating A1C BS, they continued to kiss. This activity was the basis of Specification 1 of Charge III.

Appellant then performed "oral sex" on A1C BS. This action formed the basis of Specification 1 of Charge IV. Appellant was found not guilty of the greater charge of forcible sodomy but guilty of the lesser included offense of consensual sodomy.

The incident also included Appellant taking A1C BS's hand and putting it down his pants onto his penis. When Appellant placed her hand on his penis, A1C BS would remove it and place it on his stomach or arm. She testified that she hoped Appellant would stop when she pulled her hand away from his penis. A1C BS admitted that when he placed her hand on his penis, Appellant let go of her hand. She also stated that at one point she held onto his penis while moving her hand in an up and down motion, which she termed, "jacking him off." This activity formed the basis of Specification 2 of Charge III.

We review issues of legal and factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In doing so, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Appellant has challenged the legal and factual sufficiency of both specifications of Charge III and Specification 1 of Charge IV. For Specification 1 of Charge IV, Appellant was charged with forcible sodomy but was convicted of the lesser included offense of consensual sodomy. For Specification 1 of Charge III, although Appellant was charged with rape, he was convicted of the lesser included offense of aggravated sexual assault by causing bodily harm. The elements of this crime are that at the time and place alleged (1)

Appellant caused A1C BS to engage in a sexual act, to wit: penetration of her vagina by the finger or fingers of Appellant; and (2) Appellant did so by causing bodily harm to A1C BS. *Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 45.b.(3)(b) (2008 ed.).

For Specification 2 of Charge III, Appellant was charged with aggravated sexual contact, but convicted of the lesser included offense of abusive sexual contact. The elements of this offense are that at the time and place alleged (1) Appellant caused A1C BS to engage in sexual contact, to wit: touching the penis of Appellant; and (2) Appellant did so by causing bodily harm to A1C BS. *MCM*, pt. IV, ¶ 45.b.(8)(b) (2008 ed.).

Article 120(t), UCMJ, provides the following definitions:

> "[S]exual act" means . . . the penetration, however slight, of the genital opening of another by a hand or finger or by an object, with the intent to abuse, humiliate, harass, or degrade any person, or to arouse or gratify the sexual desire of any person.
>
> . . .
>
> "[S]exual contact" means the intentional touching, either directly or through the clothing of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person, or intentionally causing another person to touch, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with the intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person.
>
> . . .
>
> "[B]odily harm" means any offensive touching of another, however slight.

The defenses of consent and mistake of fact as to consent apply to both specifications of Charge III, and the Prosecution must prove beyond a reasonable doubt that the defenses do not exist. Article 120(t), UCMJ, defines those terms—as they relate to the charges before this court—as follows:

> "[C]onsent" means words or overt acts indicating a freely given agreement to the sexual conduct by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance or submission resulting from the accused's use of

force, threat of force, or placing another person in fear does not constitute consent. A current or previous dating relationship by itself or the manner of dress of the person involved with the accused in the sexual conduct at issue shall not constitute consent.

. . .

"[M]istake of fact as to consent" means the accused held, as a result of ignorance or mistake, an incorrect belief that the other person engaging in the sexual conduct consented. The ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all circumstances. To be reasonable, the ignorance or mistake must have been based on information, or lack of it, that would indicate to a reasonable person that the other person consented. Additionally, ignorance or mistake cannot be based on the negligent failure to discover the true facts. Negligence is the absence of due care. Due care is what a reasonably careful person would do under the same or similar circumstances.

The defense of mistake of fact as to consent has both subjective and objective elements. *See United States v. Paige*, 67 M.J. 442, 455 (C.A.A.F. 2009) ("[T]he mistake of fact defense requires a subjective, as well as objective, belief that [the victim] consented to the sexual intercourse . . . ."); *United States v. Jones*, 49 M.J. 85 (C.A.A.F. 1998) ("[A] mistake-of-fact defense to a charge of rape requires that a mistake as to consent be both honest and reasonable.") (quoting *United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995); R.C.M. 916(j)(1) ("[T]he ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances.")).

At the time of Appellant's action and court-martial, consensual sodomy was an offense under Article 125, UCMJ, 10 U.S.C. 925. However, this offense was repealed in December 2013. National Defense Authorization Act for Fiscal Year 2014, Pub. L. 113-66, § 1707, 127 Stat. 672, 961 (2013). At the time of the court-martial, the Prosecution was required to prove beyond a reasonable doubt that Appellant engaged in "unnatural carnal copulation" with [A1C BS]. Article 125, UCMJ. Penetration, however slight, is required. *Id.* A1C BS's limited testimony as to this offense only described that Appellant "performed oral sex" on her. Appellant challenged the legal sufficiency of the evidence at trial pursuant to R.C.M. 917. Trial counsel's response was that the term "oral sex" was legally sufficient to establish the offense. The military judge denied the Defense motion.

Our prior case law has clearly established that the phrase "oral sex" does not per se prove the essential element of sodomy. *United States v. Hansen*, 36. M.J. 599 (A.F. Ct.

Crim. App. 1992). We repeated this holding when we again found evidence of "oral sex" legally insufficient to sustain a sodomy conviction. *United States v. Powell*, 40 M.J. 768 (A.F.C.M.R. 1994). We cautioned counsel, "[W]e can speculate as to what [the witness] meant by 'oral sex;' however, criminal convictions are made of stronger stuff than guesswork." *Id.* at 770. In that same case, we upheld other sodomy convictions when the term "oral sex" was also linked to testimony of "giving head" and a "blow job." *Id.* We have also upheld sodomy convictions when the evidence consisted of the different phrase of "oral intercourse" coupled with testimony of "sexual and oral intercourse" and "anal intercourse." *United States v. Barrow*, 45 M.J. 665 (A.F. Ct. Crim. App. 1995). As we did in that case, "we repeat that courts would not have to engage in such linguistic gymnastics and cases would not languish on appeal on issues of semantics if prosecutors would just ask witnesses to describe acts instead of speaking in legal conclusions or slang." *Id.* at 665. We see no reason to overturn this case law. Although it is possible, nay even probable, that penetration occurred, that is not the standard by which we measure a criminal conviction. In this case, based on the paucity of evidence on this offense, we find the evidence both legally and factually insufficient. We set aside and dismiss Specification 1 of Charge IV.

With regard to Charge III, Specifications 1 and 2, we find the evidence is legally sufficient but is not factually sufficient. Having reviewed the entire record of trial and making allowances for not personally observing the witnesses, we are not convinced of Appellant's guilt beyond a reasonable doubt. We find that the Government failed to prove beyond a reasonable doubt that the defense of mistake of fact as to consent did not exist regarding the interactions between Appellant and A1C BS. Having found the evidence factually insufficient to sustain the convictions of Aggravated sexual assault and abusive sexual contact with A1C BS, we set aside and dismiss Specification 1 and 2 of Charge III.

*Mil. R. Evid. 413 Instruction with Charged Offenses*

Despite trial defense counsel's objection, the military judge provided an instruction based on Mil. R. Evid. 413 that the members could use the evidence that Appellant committed one of the charged sexual assaults as evidence in determining whether he had the propensity to commit the other charged offenses. This was an instructional error that implicates constitutional rights. *Hills*, slip. op. at 12. We test for prejudice under harmless beyond a reasonable doubt standard. *Id.* This instruction has no effect on Appellant's guilty pleas. Because we authorize a sentence rehearing, we only look at the prejudice involving the charges and specifications that were contested at the court-martial and are affirmed upon appellate review. Our review of the entirety of the record convinces us that the error was harmless beyond a reasonable doubt for the affirmed charges and specifications.[9]

---

[9] Because we dismissed Specification 1 and 2 of Charge III and Specification 1 of Charge IV on other grounds, we need not determine if the instructional error was harmless beyond a reasonable doubt for these offenses.

*Challenge to AETCI 36-2909 as Punitive Instruction*

Appellant pled guilty to fifteen specifications[10] of violating a lawful general order, AETCI 36-2909. The order prohibited recruiters from attempting to develop or maintain a personal and intimate relationship with an applicant, recruit or recruiter's assistant. Appellant also admitted that he violated the AETCI by using his position as a recruiter in an attempt to gain sexual favors from an applicant. Appellant now challenges his pleas as improvident alleging that AETCI 36-2909 was not a lawful general order because it was not properly published pursuant to Air Force instructions. This court has determined that AETCI 36-2909 is enforceable as a punitive general regulation. *United States v. LeBlanc*, 74 M.J. 650 (A.F. Ct. Crim. App. 2015). Even though Appellant was charged with violating a different paragraph, we follow this binding precedent and reject Appellant's argument.

*Implied Bias*

Lieutenant Colonel (Lt Col) HR was challenged by the trial defense counsel on the basis of implied bias based on statements he made during voir dire regarding the prevention of sexual assault in the military, his personal views on adultery, and whether an accused should testify. Lt Col HR stated he was aware of the renewed emphasis by the Chief of Staff on sexual assault prevention due to the elevated number of sexual assaults in the Air Force. Lt Col HR stated that as a squadron commander he was "accountable to the members of my squadron to create an environment that is free from harassment or assault." However, in the same answer he explained that as a court-member he was accountable "to be as unbiased as possible and to weigh the proceedings of the court case based on evidence alone." Lt Col HR also stated that as a squadron commander his opinion was that adultery could rapidly and seriously have an adverse impact on good order and discipline. He also stated that this view was apart from the UCMJ offense and he would follow the military judge's instructions. Although Lt Col HR indicated during group voir dire that he believed a military member facing court-martial should testify, he freely volunteered that he understood that an accused was not obligated to testify and would not hold his silence against him.

"We review implied bias challenges pursuant to a standard that is less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Castillo*, 74 M.J. 39, 42 (C.A.A.F. 2015).

> Rule for Courts-Martial 912(f)(1)(N) sets the basis for an implied bias challenge, which stems from the "historic concerns about the real and perceived potential for command influence" in courts-

---

[10] Specifications 1-14 of Charge I and the Specification of the Additional Charge.

martial. [*United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007)]. Unlike the test for actual bias, this court looks to an objective standard in determining whether implied bias exists. *United States v. Wiesen*, 56 M.J. 172, 175 (C.A.A.F. 2001). The core of that objective test is the consideration of the public's perception of fairness in having a particular member as part of the court-martial panel. [*United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)]. In reaching a determination of whether there is implied bias, namely, a "perception or appearance of fairness of the military justice system," the totality of the circumstances should be considered. *United States v. Dale*, 42 M.J. 384, 386 (C.A.A.F. 1995). While cast as a question of public perception, this test may well reflect how members of the armed forces, and indeed the accused, perceive the procedural fairness of the trial as well.

*United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015).

Based on the totality of Lt Col HR's responses, we find no error in the military judge's denial of the implied bias challenge. Lt Col HR was aware of concerns about sexual assault in the military, but clearly distinguished between his duties as a commander to foster an environment free from sexual harassment and assault from his duties as a court-member to make the determination free from outside pressure and based on the evidence presented at court. This is similar to his answers about adultery—which even when not a crime may have an adverse impact on office morale and productivity. The totality of his answers display an Air Force officer who was conscientious and thorough in his responses and dedicated to fulfilling his duties a court-member. We have no concern that the public's perception of fairness was diminished by this officer's service as a court-member.

Although he did not do so at trial, Appellant now raises a challenge to Colonel MS. He alleges that Colonel MS provided misleading answers during group voir dire when he stated he did not know Lt Col JN, who preferred the charges and specifications. Appellant alleges that two weeks after the court-martial, Lt Col JN began working with Colonel MS and, therefore, he must have known her before the court-martial began. We find this argument spurious. The question during group voir dire was "Do any of you know any of the people that are named in the charges and specifications?" All the members answered they did not. Lt Col JN is not named in any of the charges and specifications. Therefore, there was nothing misleading or incorrect about Colonel MS's answer even if he knew Lt Col JN prior to the court-martial.

*Ineffective Assistance of Counsel*

Appellant has alleged a myriad of actions and inactions that he describes as examples of ineffective assistance of counsel. Having carefully reviewed and analyzed

appellate defense counsel's listing of alleged insufficiencies, and in light of the totality of facts and circumstances before us, we find no merit in Appellant's allegations of ineffective assistance of counsel. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

This Court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, Appellant has the burden of demonstrating: (1) a deficiency in counsel's performance that is "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) that the deficient performance prejudiced the defense through errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

The deficiency prong requires Appellant to show his defense counsel's performance "fell below an objective standard of reasonableness," according to the prevailing standards of the profession. *Id.* at 687–88. The prejudice prong requires Appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In doing so, Appellant "must surmount a very high hurdle." *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006) (quoting *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000)). This is because counsel is presumed competent in the performance of their representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *Alves*, 53 M.J. at 289.

> To determine whether the presumption of competence has been overcome, our superior court has set forth a three-part test:
>
> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result? *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)) (alteration and omission in original).

> "[T]he defense bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). When there is a factual dispute, appellate courts determine whether further fact-finding is required under *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). If, however, the facts alleged by the defense would not result in relief under *Strickland*, the Court may address the claim without the necessity of resolving the factual dispute. *See Ginn*, 47 M.J. at 248.

*United States v. Cron*, 73 M.J. 718, 728 (A.F. Ct. Crim. App. 2014).

We determine that the broadside attacks Appellant now makes against his trial defense counsel do not establish ineffective assistance of counsel. Even if we assume the information in Appellant's declaration is true, we find no evidence that any of trial defense counsels' action fell below ordinarily expected levels of advocacy and representation. The 1433 page transcript amply reveals that trial defense counsel zealously defended their client, and were successful in having him acquitted of several offenses. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Accordingly, we decline to find the purported examples of trial defense counsels' assistance to have been ineffective. *See id.*; *United States v. McConnell*, 55 M.J. 479, 481 (C.A.A.F. 2001). Although appellate defense counsel would now argue for different tactics, that does not mean the ones chosen at trial were ineffective. *See United States v. Tharpe*, 38 M.J. 8, 16 (C.M.A. 1993) ("[T]he fact that appellate defense counsel have now conceived a different trial tactic from the one used at trial does not mean the lawyer at trial was ineffective.")

*Sentence Reassessment*

This Court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: "dramatic changes in the penalty landscape and exposure," the forum, whether "the remaining offenses capture the gravamen of the criminal conduct," whether significant or aggravating circumstances remain admissible and relevant, and whether "the remaining offenses are of the type that [we as appellate judges] have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Winckelmann*, 73 M.J. at 15–16.

Based on the totality of the circumstances, we remand this case for a sentence rehearing. Our set aside and dismissal of wrongful sexual contact in Specification 2 of Second Additional Charge I did not alter the sentencing landscape as the military judge had already merged it for sentencing with Specification 1 of that same Charge. Our dismissal and set aside of indecent exposure in Specification 3 of Second Additional Charge I reduced the maximum confinement by 1 year. However, the gravamen of this criminal conduct and all the relevant evidence would have still been admissible related to Specification 1 of that Charge.

The portion of our decision which justifies a remand is the set aside and dismissal of Specification 1 of Charge IV and Specifications 1 and 2 of Charge III. The penalty landscape has been reduced by 42 years. The evidence of Appellant's improper interactions with A1C BS would have been limited in sentencing to only those related to the guilty plea to the violation of the lawful general order. Additionally, because members determined the sentence in this case, we are less sure of what they would have decided as an appropriate sentence for the remaining charges and specifications. We conclude that the only fair course of action is to authorize a sentence rehearing. *See United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003).

Because we remand this case for a sentence rehearing, new post-trial processing will be required. Therefore, Appellant's alleged error in the post-trial processing is moot.

We do not resolve Appellant's assignments of error regarding delays in post-trial processing and whether relief is warranted under either *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006) or *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). We determine that these issues should be evaluated with a consideration of the post-trial processing of the sentence rehearing.

*Conclusion*

We set aside and dismiss Specifications 2 and 3 of Second Additional Charge I, Charge III and its Specifications, and Specification 1 of Charge IV. The remaining findings are correct in law and fact, and are affirmed. Article 66(c), UCMJ. The record of trial is returned to The Judge Advocate General for remand to the convening authority who may order a sentence rehearing on the affirmed charges and specifications. Article 66(e), UCMJ. Thereafter, Article 66(b), UCMJ, will apply.

ALLRED, Chief Judge, Dissenting in part:

I do not agree that Charge III and its Specifications are factually insufficient. Nor would I remand this case for sentence rehearing. Otherwise, I concur with the majority.

As for Charge III and its Specifications, I am convinced that the alleged sexual acts occurred, that the victim did not consent to Appellant's sexual activity, and any mistake as to consent could not have been reasonable. Appellant was a married Technical Sergeant with 14 years of military service, while A1C BS was an Airman with less than a year's experience who had not yet arrived at her first duty station. All indications are that Appellant repeatedly sought to engage A1C BS in sex and that he used his rank, position, and authority to pressure her. A1C BS never verbally consented to sexual activity. Any banter or physical contact suggesting consent were more than outweighed by the victim's manifestations that she did not freely agree to the sexual conduct. The court members were properly instructed as to consent and mistake of fact. They found beyond reasonable doubt that Appellant committed the alleged offenses and that no defense of mistake applied. I reach the same conclusion.

I would affirm Charge III and its Specifications and reassess the sentence to the one approved by the Convening Authority. Thus, I dissent from these portions of the majority's opinion.


FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court